**KELLEMS et al. v. UNITED STATES et al.**
**Civ. A. 2805.**

United States District Court
D. Connecticut.
April 25, 1951.

682

Francis F. McGuire, of New London, Conn., for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Fred J. Neuland, Special Assts. to the Atty. Gen., and Adrian W. Maher, U. S. Atty., New Haven, Conn., for defendants.

HINCKS, Chief Judge.

■ Whether the penalty statute, 26 U.S.C.A. § 2707(a) is applicable to a case of non-compliance with the Withholding Act, 26 U.S.C.A. § 1621 et seq., is a question which I decided adversely to the plaintiffs for reasons stated in my preliminary memorandum and order of October 26, 1950, denying the plaintiffs' motion for judgment.

■ The "government", which for purposes of this memorandum may be taken as a comprehensive designation of both defendants, has taken the position throughout, and still adheres to the position, that an intentional and deliberate non-compliance, which concededly existed here, was enough to bring the penalty statute into play. I overruled this contention for reasons also stated in my said preliminary memorandum and denied the government's motion for summary judgment. I then held, and still hold, that the word *wilful* in the penalty statute means "without reasonable cause," that is to say, "capricious". These rulings left open for trial one central question of fact common to all four counts of the complaint, viz., was the plaintiffs' conduct of non-compliance without reasonable cause?

■ On trial, the plaintiffs offered as evidence of reasonable cause for their conduct an expressed belief that the Withholding Act was unconstitutional, and that the public interest required that the constitutionality of the Act should be brought under judicial review in a test case.

To qualify such a belief as "reasonable cause" for their non-compliance, it was necessary for the plaintiffs to prove that it was a belief bona fide and sincerely held: a mere verbal claim of such a belief would not suffice. And, of course, opposition to the Act on political or economic grounds would not constitute proper or reasonable cause for non-compliance with an Act of Congress.

On this essential element of the plaintiffs' case, I confess, I have not been wholly free from doubt. It is, of course, true that the plaintiffs derived no pecuniary gain from their position and that there was nothing corrupt or furtive in their conduct. But they weakened their case by putting into evidence a public address made by the plaintiff Miss Kellems in Los Angeles on February 13, 1948, in which she advocated concerted political action to repeal the income tax law, and announced her personal intention of future non-compliance with the Withholding Act, which she had been obeying for five years, in order to develop a test case on the constitutionality of the Act. If she had indeed been primarily actuated by belief that the Act was unconstitutional, it is difficult for me to understand why she, a Connecticut manufacturer, found it necessary to announce her future non-compliance in a public speech in California. The suggestion that publicity was necessary to persuade government officials to bring a test case can hardly explain a public speech made in advance of the contemplated non-compliance.

Nor are the letters which the plaintiff Miss Kellems wrote to the President and the Secretary of the Treasury, helpful on the issue whether the plaintiffs had a bona fide belief that the Act was unconstitutional. In the tax law, no criminal sanctions attached for a mere non-compliance with the Withholding Act; not until non-compliance resulted in loss of tax revenue to the United States did any criminal statute apply. If this was known to the plaintiffs their clamor for indictment smacks of insincerity when in the same letters they make it plain that because their employees had paid their taxes directly there was not legal cause for indictment. If, on the other hand, the plaintiffs were unaware of the lack of criminal sanctions for mere non-compliance which resulted in no prejudice to the United States, their ignorance emphasizes how shallow their study of the subject-matter had been and tends to show that their course of action had proceeded without the thought that reasonably prudent business men give to such matters.

Moreover, the plaintiffs' course of action seems not to have been consistent throughout. Although they attributed their non-compliance to constitutional convictions, when they brought on for hearing their motion for judgment neither in oral argument or comprehensive brief did they urge the unconstitutionality of the Withholding Act as a ground for judgment. Consequently, my ruling on that motion was equally silent on the question of constitutionality. It was not until the close of evidence on the trial that the plaintiffs, by motion for a directed verdict, asked the court to rule upon the constitutionality of the Act. We have, therefore, this sequence of positions taken: the plaintiffs complied with the Act from 1943 to February, 1948, on the ground that it was then justified by the war emergency; they refused compliance from February, 1948 [1], to October, 1950, basing their conduct on a professed belief in its unconstitutionality; in October, 1950, they resumed compliance [2]; and then after compliance had been resumed, plaintiffs at the trial moved for a directed verdict on the ground that the Act was unconstitutional after all. Such vacillation, especially when not explained, though not of itself conclusive against the plaintiffs was scarcely persuasive on the issue of good faith.

However, even if notwithstanding these weaknesses on this phase of their case, the plaintiffs were primarily actuated by an honest belief in the unconstitutionality of the Act, they have another hurdle to surmount before they can succeed. For, as I instructed the jury, the plaintiffs' conduct must be found to be without reasonable cause unless they had done what a reasonably prudent business man in a similar situation would have done to verify the soundness of their opinion on the constitutional question. Miss Kellems testified that she believed the Act was invalid as in violation of the Fifth and Thirteenth Amendments to the Constitution and that she had discussed this conclusion with her brother, David L. Kellems, and a number of friends. Specifically, she referred to conversations with an economist, a newspaper writer, and an editor of a newspaper. There was, however, nothing in the evidence to qualify any of these persons as experts in the field of federal taxation or constitutional law: her testimony suggests that the opinions expressed were the product of conversations on social occasions. None of them were lawyers and Miss Kellems testified that she had not consulted an attorney before proceeding to violate the Act. Indeed, so far as the record shows, she made not even an inquiry to ascertain whether the constitutionality of the Act had ever been judicially sustained. True, it appeared from her testimony that she is a highly educated person, but in the recital of her education and

1. Why their non-compliance should begin in February, 1948, was not explained.

2. Miss Kellems explained her resumption of compliance in October, 1950, by saying it was because of the ruling in my Memorandum of October, 1950, that the Act was legal. In fact, my memorandum contained no such ruling: not until I denied plaintiffs' motion for a directed verdict at the close of the trial did I make a ruling sustaining the constitutionality of the Act.

experience the only mention of any special study of Constitutional Law was a college course in the History of Constitutional Law. Since her college days Miss Kellems had pursued studies in economics at Columbia and has been in business for upwards of twenty-three years. I pause to observe that every thoughtful citizen, amongst whom I should not hesitate to include Miss Kellems, knows that since the time of her college study of Constitutional Law, there have been numerous and vast changes in the content of that field of law.

 In applying the test stated above which depends upon the conduct to be expected of a reasonably prudent man of business, one must bear in mind that the subject-matter of federal taxation and of constitutional law lies in a highly technical field which at many points is obscured by uncertainties unmistakenly evidenced by the conflicting views even of our most eminent jurists. In a period of such flux and in a scene of such uncertainty it may indeed be plausibly argued that even that mythical "ordinarily prudent" person, who in the eye of the law furnishes the standard of reasonable conduct, would have considered it a futile act to obtain a lawyer's advice,— or indeed, like the plaintiffs, to do more than to read the text of the Act against the text of the constitutional provisions deemed pertinent and to discuss the opinion emerging from such untutored reading with friends at dinner. Apparently the jury thought along such lines. I cannot say that reasonable men and women could not entertain such a concept of the prudent business man. I have therefore denied the government's motion to set aside the verdict of the jury on the second, third and fourth counts which were directed against the Collector and which under the law were submitted to the jury for decision. But for the decision on the first count, which lies against the United States and is triable before the Court without a jury, the primary responsibility rests upon me. And on my conscience I must assert a different view. My experience with men of business and my observation of their attitudes and practice leads me to the belief

that before assuming to treat as a nullity an Act of Congress regularly enacted which had already over a period of years channeled into the national treasury the flow of tax monies running, it is fair to surmise, into the billions and affecting millions of individual citizens as well as large corporations which are able and on occasion have been willing to challenge the constitutionality of Congressional Acts, the reasonably prudent business man would do more than these plaintiffs did to verify the soundness of an opinion that the Act was unconstitutional. He would, I think, at least obtain the advice of a lawyer. True, he might perhaps expect a report that the confusion in the pertinent field was such that no wholly dependable and unqualified advice could be given. However, he would want, I think, at least to ascertain whether the fog generally prevalent in the over-all field actually obscured the precise area covered by his inquiry. He would, at least in my estimate of his sagacity, not be content with a brief "yes" or "no" answer from a lawyer to be used as opiate for his own conscience and intelligence: he would want to know about the adjudicated cases nearest in point and would ask for a reasoned opinion reduced to writing and signed, which he would examine and discuss. Such, at least, is my concept of the prudent business man. See Haywood Lumber & Mining Co. v. Commissioner of Internal Revenue, 2 Cir., 178 F.2d 769; and Genesee Valley Gas Co. v. Commissioner of Internal Revenue, 86 U.S. App.D.C. 131, 180 F.2d 41.

Even if a lay taxpayer felt that his knowledge and capacity were such that his own opinion was as reliable as the considered opinion of a lawyer expert in the relevant field, he well might feel that at the very least he should make his own examination not merely of the statutes but also of the adjudicated cases on the constitutional provisions relied upon and glean such light as he could from their content. Such an effort might perhaps lead him to change his view that advice from a lawyer would not be helpful. It might perhaps serve as some evidence that his opinion was more than the product of "hunch" or

caprice; that conduct based thereon proceeded indeed from reasonable cause.

I make no categorical holding that the procedure just suggested or any other specific procedure was an element indispensable to a showing of reasonable cause. But in the light of such possibilities the scant showing made by these plaintiffs fails to persuade me that they did as much to verify their opinion as reasonably prudent business people, responsible for the management of a substantial industrial enterprise, would have done with respect to a matter of such far-reaching public importance.

In making this finding, I do not overlook Miss Kellems' testimony that she generally disposed of other legal problems relating to her own business without a lawyer's advice. But this is a fact which, if true, tends to show no more than an absence of bad motive. That her conduct was self-consistent does not demonstrate that it was that to be expected of a reasonably prudent person. A personal practice to cut corners at high speed on the highways without regard to the safety of others is not competent evidence of due care: it is not even persuasive of due care.

The finding that the plaintiffs have failed to prove that their conduct was that of a reasonably prudent business man requires a finding that as to the first count their proofs on the issue of wilfulness are insufficient. There are no other issues.

## First Count

The second, third and fourth counts of the plaintiffs' complaint sounded against the Collector of Internal Revenue and, as was the plaintiffs' right, were tried before a jury. The first count, because the Collector immediately involved was no longer in office, was brought against the United States and under the law, 28 U.S.C.A. §§ 1346 and 2402, was triable by the court without a jury. A single record of fact was made upon all four counts: the only open issues were the same in each. The jury returned verdicts for the plaintiffs on the last three counts and it is now my task to make the findings and state the conclusions of the court as to the first count. I have also to pass upon the collector's mo-tions to set aside the verdicts, for new trial and judgment on the last three counts, these motions having been argued and finally submitted on March 30th, last.

## Findings of Fact

1. The plaintiffs, Vivien Kellems, David L. Kellems, and Vivien Kellems and David L. Kellems, d. b. a. Kellems Company, at all times herein mentioned were, and now are, residents of the State of Connecticut within and for the District of Connecticut.

2. The plaintiffs, Vivien Kellems and David L. Kellems, are all of the partners in that certain partnership doing business as Kellems Company, and as such partners they are employers and were at all times herein mentioned employers paying wages to employees.

3. The plaintiffs, on and before February 13, 1948, approximately, did withhold and deduct from wages paid to employees amounts of money purportedly required to be deducted and withheld under the provisions of Section 1622 of the Internal Revenue Code, 26 U.S.C.A. § 1622, but on and after February 13, 1948, the plaintiffs did not withhold and deduct from wages paid to such employees any amounts of money purportedly required to be deducted and withheld under said provisions of Section 1622.

4. All employees of the plaintiffs at all times herein mentioned paid on or before the due date to the Collector of Internal Revenue for the district within which said employees resided the tax imposed against them by Chapter 1 of the Internal Revenue Code, 26 U.S.C.A. § 1 et seq., being the Income Tax, and payments upon such Income Tax were made by each employee quarterly on or before the quarterly due dates in an amount equal to the amount required to be deducted and withheld by the employer under the provisions of Section 1622 of the Internal Revenue Code and equal to the amount required of them for the payment of the estimated tax.

5. On May 13, 1948, by notice of that date, said Vivien Kellems and David L. Kellems and Vivien and David L. Kellems d. b. a. Kellems Company were notified of

an assessment for the Withholding Tax, 1948 list, first quarter 1948, ·of $1,677.80 with a penalty assessed thereon in the amount of $837.70 and interest in the amount of $10; and after a credit of $840.-10 there was assessed a balance due of $1,-685.40, including the penalty of $837.70, the full amount of the withholding tax for the first quarter of 1948 not withheld, and interest in the amount of $10.00. And thereafter on or about May 23, 1948, the Acting Collector of Internal Revenue for the District of Connecticut, Thomas F. Griffin, through his deputy, collected said tax, penalty and interest by distraint on funds of said Vivien Kellems and David L. Kellems and Vivien Kellems and David L. Kellems, d. b. a. Kellems Company on deposit in The Westport Bank and Trust Company, Westport, Connecticut.

6. On August 11, 1949, the plaintiffs duly filed with the Collector of Internal Revenue for the District of Connecticut claims on forms 843, the form provided therefor by the Treasury Department of the United States, for the refund of taxes and interest of Eight Hundred Forty-Seven Dollars and Seventy Cents ($847.70) and for the refund of penalties in the amount of $837.70 for the first quarter of 1948.

7. On October 14, 1949, said Collector of Internal Revenue, acting by E. J. McLarney, Deputy Commissioner, denied and rejected the plaintiffs' said claim for refund and duly notified the plaintiffs to that effect by registered mail and no part of the amount so claimed has been credited, refunded, or repaid to the plaintiffs, or any one of them, or to anyone for their account.

8. The defendant, the United States, has received the sums collected from the plaintiffs as stated in Paragraph 5 hereof, and although payment thereof has been duly demanded, the defendant has retained said sums and has refused and still refuses to pay said sum, or any part thereof, to the plaintiffs, and the plaintiffs have re-

ceived no reimbursement of any part thereof from any source.

9. The plaintiffs intentionally and deliberately refused to withhold and pay over the income taxes accruing against their employees as stated in paragraph 3 hereof upon the ground that they believed that the Withholding Act, I.R.C., Sec. 1622, was unconstitutional, and void.

10. The plaintiffs in refusing to comply with the Withholding Act acted without reasonable cause.

## Conclusions of Law

1. The plaintiffs are entitled to recover of the defendant the amount of the income taxes assessed against their employees which although paid by the employees directly were collected also from the plaintiffs. This was conceded by the United States.

2. The plaintiffs would be entitled to recover of the defendant the penalties assessed against them and collected from them on account of their refusal to withhold and pay over in the first quarter of 1948 if their said refusal was not wilful within the meaning of I.R.C. 2707(a), 26 U.S.C.A. § 2707(a).

3. The word "wilfully" in I.R.C. 2707(a) means "without reasonable cause."

4. The burden of proof was on the plaintiffs to prove by a fair preponderance of the evidence that their conduct was not wilful.

5. Under the conclusion of law first above stated the plaintiffs are entitled to judgment against the United States in the amount of $847.70, which was the amount of the income taxes of plaintiffs' employees which, although paid directly by the employees, was collected, together with interest of $10, also from the plaintiffs.

6. The plaintiffs are not entitled to recover of the United States the penalty exacted of them as stated in Finding 5 above.