W. E. CROSS, trading as Virginia Tours and Gray Line of Richmond, Appellee,

v.

UNITED STATES of America, Appellant.

No. 8709.

United States Court of Appeals Fourth Circuit.

Argued Oct. 10, 1962.

Decided Dec. 13, 1962.

Michael I. Smith, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Atty., Dept. of Justice, Claude V. Spratley, Jr., U. S. Atty., and Granville R. Patrick, Asst. U. S. Atty., on brief), for appellant.

Charles L. Reed, Richmond, Va. (John W. Edmonds, III, and Tucker, Mays, Moore & Reed, Richmond, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, BRYAN, Circuit Judge, and WINTER, District Judge.

ALBERT V. BRYAN, Circuit Judge.

The Federal 10% impost on transportation fares [1], the District Court has concluded, was not assessable on the amounts paid the Gray Line of Richmond, Virginia, for its bus tours in sightseeing and visiting the City's historic and other points of interest. Therefore, the Government is ordered to refund the "penalty" exacted by the tax statute and paid under protest by Gray Line for its failure to collect from the passengers and remit to the Government the excise claimed for 1957 and 1958. The United States appeals and, we hold, successfully.

Ground for his determination was found by the District Judge in these assertions of Gray Line:

1. While tour tickets were $3.00 for an adult and $1.50 for a child, the taxpayer's books fairly show that no more than 60¢ of either was allocable to transportation, the remainder being for non-transportation or tour services, and no tax is levied on fares of 60¢ and less.[2]

---

[1]. Sections 4261(a) and (d), 4262(a), 4263 (a), 4291 and 6672 I.R.C.1954 (as amended by §§ 1(a) and 4(b), 3, 2 and 4(c), Act of July 25, 1956, 70 Stat. 644), 26 U.S.C. §§ 4261, 4262, 4263, 4291 and 6672 (1958 ed.).

[2]. Section 4263 supra note 1.

2. In any case, the failure to collect the tax was not willful, the statutory prerequisite to liability for the penalty.

Gray Line of Richmond is a proprietorship of W. E. Cross, taxpayer-appellee here. In a related enterprise he trades as Virginia Tours. Buses and accompanying drivers as needed are rented by Gray Line from Virginia Tours. Either a 7-passenger Volkswagen or a 29-passenger Ford bus is engaged, as the number of tourists demands. For the Volkswagen Gray Line pays 20¢ per mile and for the Ford 40¢. There are two trips daily, one in the morning, the other in the afternoon. Besides the individual tickets a group ticket is sold at a somewhat lower rate, but this difference is not significant in the case.

The tour is 10½ miles; with travel to and from the garage it is 12 miles. En route the driver lectures and points out places of interest. Four stops are made, three historical sites and one at an important industry. The occupants of the bus are taken through the plant by hostesses it provides, while the driver and his bus wait. At the other attractions the driver is the guide. The whole trip occupies approximately 2½ hours, during an hour of which the bus is in motion.

Prior to 1957 and since 1958 Gray Line has paid the toll out of the price of the ticket, reducing the price so that the flat rates of $3.00 and $1.50 remained constant. For 1957 and 1958 taxpayer Cross, as proprietor of Gray Line, entered each adult fare on his books as 60¢ for transportation and $2.40 for tour service, and a corresponding breakdown was made of the child's fare, 30¢ to transportation and $1.20 to tour service.

Preliminarily the Government urges that "the sum of the services performed by the taxpayer for his passengers constituted 'taxable transportation'" within the meaning of the tax statute, and therefore the fare was not subject to division between transportation and nontransportation phases of the trip, citing White House Sightseeing Corp. v. United States, 300 F.2d 449 (Ct.Cl.1962); Armour & Co. v. United States, 169 F.Supp.

521, 144 Ct.Cl. 697, cert. denied, 361 U. S. 821, 80 S.Ct. 67, 4 L.Ed.2d 66 (1959). To the contrary, the taxpayer urges that the primary and overtopping purpose of the tour was sightseeing, or that at the most the Government could look only to such part of each fare as was allocable to transportation cost, citing Smith v. United States, 110 F.Supp. 892 (N.D.Fla. 1953); Treas.Reg. §§ 42.4261–2(d) and 42.4261–8(f) post.

■ However, we need not resolve this dispute. Even if the fare is divisible between transportation and tour service, as the taxpayer maintains, still he cannot prevail. Decisive of this case, as the Government next insists, is that the burden was the taxpayer's to show also, and with precision, the correctness of his divorcement of the two costs, and this he did not do. Reinecke v. Spalding, 280 U.S. 227, 232–233, 50 S.Ct. 96, 74 L.Ed. 385 (1930); United States v. Pfister, 205 F.2d 538, 542 (8 Cir. 1953); Lightsey v. Commissioner, 63 F.2d 254, 255 (4 Cir. 1933).

While the statute does not deal with segregation of the constituents of a fare, speaking directly to the problem are Treasury Regulations on Excise Taxes (1954 Code):

"SEC. 42.4261–2 *Rate and Application to Tax.*—* * *

* * * * * *

"(d) Where a payment covers charges for nontransportation services as well as for transportation of a person, such as charges for meals, hotel accommodations, etc., the charges for the nontransportation services may be excluded in computing the tax payable with respect to such payment, *provided such charges are separable and are shown in the exact amounts thereof in the records pertaining to the transportation charge.* If the charges for nontransportation services are not separable from the charge for transportation of the person, the tax must be computed upon the full amount of the payment.

"SEC. 42.4261-8 *Examples of Payments not Subject to Tax.*—In addition to a payment specifically exempt the following are examples of payments not subject to tax:

* * * * * *

"(f) *Miscellaneous charges.*—Where the charge is separable from the payment for the transportation of a person and *is shown in the exact amount thereof on the records pertaining to the transportation payment,* the tax on the transportation of persons does not apply to the following and similar charges:

* * * * * *

"(4) Charges for admissions, *guides,* meals, hotel accommodations, and other nontransportation services, for example, where such items are included in a lump sum payment for an all-expense tour.

"(5) Charges in connection with the charter of a land, water, or air conveyance for the transportation of persons, such as for parking, icing, sanitation, 'layover' or '*waiting time*', movement of equipment in deadhead service, dockage, wharfage, etc." [Emphasis added.]

The basis of our denial of plaintiff's suit, to repeat, is the absence of a showing in his records of the "exact amounts * * * pertaining to transportation". The inexactness of his transportation cost figure is evinced in the taxpayer's method of reckoning it. He testified that the 60¢ and 30¢ allocations were justified on "the mileage rate * * * charged per charter, the size of the bus, the number of passengers to be accommodated plus the fact that other companies operate at certain rates and [I figured] fixed cost and arrived from that". By "per charter" he emphasizes, he means that the allocation by Gray Line is greater than the amount charged to other persons for the same equipment. He demonstrates the latter argument as follows:

In 1957, according to his books, 170 trips were made by the Volkswagen. At 12 miles per trip the total mileage would be 2040, and at 20¢ per mile this would amount to $408. The same year 368 trips were made by the Ford bus. Multiplied by 12 that would mean an aggregate of 4416 miles, and at 40¢ per mile would produce $1766.40. The grand total would be $2174.40. But upon the basis of 60¢ per adult and 30¢ per child the transportation costs allocable for 1957 would be a greater sum, to-wit, $2646.00. Like contrasts exist for 1958. Taxpayer notes also that transportation to the four tour points by ordinary transit bus would cost only 45¢ per passenger.

Against these arguments, however, the uncontroverted evidence is that the over-all transportation cost allocated by Gray Line on its books in 1957 is $4183.80 which is only about a half of the $7917.40 Gray Line paid to Virginia Tours in that year for buses and drivers. In 1958 the ratio of the same items is $3127.50 to $7967.60. Taxpayer accounts for the excess of the rental paid for buses and drivers in this way: the larger figure included driver-guide service and bus rental during the hour and a half in which the bus was not in motion. But this explanation will not bear scrutiny. First, the evidence is that the taxpayer-proprietor did not incur extra cost for drivers during the stop-periods and the drivers were not paid extra for guide-work. Secondly, no amount is proved to establish the figure charged for the stand-by time of the bus, and, further, taxpayer has said throughout that only mileage was used for tax purposes.

Finally, the total expenses of operation of Gray Line for 1957 and 1958 appear on the taxpayer's books in the following amounts:

1957

| | |
|---|---|
| Amount paid to Virginia Tours for lease of buses and drivers | $ 7,917.40 |
| Advertising | 1,912.79 |
| Telephone | 370.69 |
| Licenses | 450.00 |
| Office Supplies | 101.02 |
| Convention expenses | 100.00 |
| Commissions | 2,159.53 |
| Total | $13,011.43 |

**1958**

Amount paid to Virginia Tours
  for lease of buses and
  drivers ................$ 7,967.60
Advertising ................ 1,628.26
Telephone ................. 454.97
Licenses .................. 250.00
Office Supplies ............. 251.91
Commissions .............. 1,551.40
    Total ................$12,104.14

No explanation is attempted of the failure to include in the cost of transportation the items of advertising and those following. It thus reasonably appears that the actual cost of transportation in 1957 and 1958 could well have been far more than the 60¢ and 30¢ apportionment made by the taxpayer for excise tax purposes. At least neither the vague exposition of the apportionment by the taxpayer nor his book figures show a compliance with the regulation's requirement that the transportation charges when separable and separated be "shown in the exact amounts thereof in the records pertaining to the transportation charge." See White House Sightseeing Corp. v. United States, supra, 300 F.2d 449 (Ct.Cl.1962); Loew's, Inc. v. United States, 99 F.Supp. 100 (S.D.Cal. 1951).

Furthermore, exemptions exampled in the Treasury Regulations already quoted do not save taxpayer. True, they allow deduction of charges for "guides" and "waiting time" in charter hires, but both of these exceptions are contingent upon charges being "shown in the exact amount thereof on the records pertaining to the transportation payment".

The "penalty" for failure of the taxpayer to collect the excise is not, as the term generally implies, a forfeiture or amercement. Actually, the statute uses the word to describe "the total amount of the tax * * * not collected, * * * " [3]. It is not a superadded sum. Only when the carrier "willfully fails" to obey the levying statute is the penalty assessed. The District Judge's definition of "willfully" is well-phrased and accurate: "One who acts intentionally, conscientiously and voluntarily, acts wilfully." Bloom v. United States, 272 F.2d 215, 223 (9 Cir. 1959), cert. denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960). But cf. Gray Line Co. v. Granquist, 237 F.2d 390, 395 (9 Cir. 1956), cert. denied, 353 U.S. 911, 77 S.Ct. 667, 1 L.Ed.2d 664 (1957). In previous years, as already noted, taxpayer Cross had recognized the excise. He was led to renounce further acknowledgment by a casual conversation with an unidentified lawyer in Florida. Before denying the obligation, he obtained an opinion from the Internal Revenue Service. It advised him of the duty to collect.

Taxpayer's adoption of a different course, while by no means morally culpable, was deliberate. He preferred to take his chances in litigation. Though all in good faith, nonetheless he thereby "willfully" failed to follow the statute. He does not escape the penalty.

The judgment in review will be reversed and the action dismissed.

Reversed with final judgment.

---

3. § 6672, 26 U.S.C. § 6672 (1958 ed.).