Ralph S. HIRSCH, II, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 73–89.

United States District Court,
S. D. Ohio, E. D.

March 20, 1975.

Douglas S. Jauert, Columbus, Ohio, for plaintiff.

Scott P. Crampton, Asst. Atty. Gen., Stephen J. Csontos, Dept. of Justice, Washington, D. C., William W. Milligan, U. S. Atty., Columbus, Ohio, for defendant.

### OPINION AND ORDER

DUNCAN, District Judge.

This matter is before the Court for judgment upon stipulated facts. Jurisdiction is had pursuant to 28 U.S.C. § 1346(a)(1). Plaintiff brings suit to recover a partial payment of a penalty assessed against him by the Commissioner of Internal Revenue pursuant to §§ 6671(b) and 6672 of the Internal Revenue Code of 1954 (hereafter, I.R.C.). The government counterclaims for the balance of the assessed penalty.

I.R.C. §§ 6671 and 6672[1] provide that the corporate official who is responsible for the payment over to the government of income and social security (F.I.C.A.) taxes which have been withheld by the corporate employer from the paychecks of its employees is himself personally liable, via a 100% penalty, for amounts which he willfully fails to pay over. Plaintiff does not deny that he was the responsible "person", within the meaning of § 6671(b), of Carriage House Imports, Inc. (Carriage House), so that the issues presented in this case are whether he failed to pay over withheld monies, and, if so, whether this failure was willful.

Plaintiff during the second calendar quarter (April, May and June) of 1970 was an officer of Carriage House. During that quarter Carriage House withheld from its employees' checks a total of $6,159.17. This amount included $4,559.46 applicable to the employees' income taxes and $1,599.71 applicable to the employees' portion of their F.I.C.A. taxes. Carriage House was required by law to withhold these amounts, see I.R.C. §§ 3402(a) and 3102. Pursuant to I.R.C. § 7501, these amounts were held by Carriage House as a special trust fund for the United States. These amounts will be referred to herein as the "trust fund liability" of Carriage House; the employer's portion of the employees' F.I.C.A. taxes, see I.R.C. §§ 3101 and 3111, will be referred to as the "non-trust fund liability" of Carriage House. Since the law in effect requires the employer to match its employees' F.I.C.A.

---

1. 26 U.S.C. § 6671(b) provides as follows:
 Person defined.—The term 'person', as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.
 26 U.S.C. § 6672 provides as follows:
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

contributions, the non-trust fund liability of Carriage House during the relevant quarter was $1,599.70, making Carriage House's total liability, trust and non-trust fund, for employment taxes during the second quarter $7,758.87. The parties so stipulate, and they further stipulate that Carriage House paid only $6,159.17 of this liability.

In May and June of the second quarter Carriage House purchased from the government depository receipts with respect to its employment tax liability, in the amounts of $2,820.24 and $2,522.52, respectively. In making these deposits, Carriage House did not specify a preference as to how the money should be allocated as between its trust-fund and non-trust-fund liabilities. On June 30, 1970, then, Carriage House had paid over to the government the sum of $5,342.76 towards its trust-fund liability of $6,159.17 and its total trust and non-trust fund liabilities of $7,758.87.

The record does not disclose exactly what happened to Carriage House, but it evidently went under financially. Carriage House filed on August 25, 1970, a late return (Form 941) pertaining to its second quarter employment tax liabilities. The return was due, by virtue of Treasury Regulation [26 C.F.R.] § 31.-6071(a)–1(a),[2] on July 31, 1970. With this return Carriage House enclosed a check for $816.41. Typed on the reverse side of the check was the following language:

Receipt acknowledge [sic] as payment in full by Carriage House, Inc. of Trust Fund portion of Federal Withholding Tax and FICA taxes for the period ending June 30, 1970 (Form 941)

| Total Trust-Funds: | | |
|---|---|---|
| FWT | $4,599.46 | |
| FICA | 1,599.71 | |
| | $6,159.17 | |
| Less Taxed | 5,342.76 | Deposited |
| | $ 816.41 | |

Drawer hereby directs the funds be applied as provided above and the payee by endorsing this check hereby agrees to apply siad [sic] funds in accordance with such direction.

By use of this language, it is clear that Carriage House attempted to designate the allocation, as between its trust and non-trust fund liabilities, of not only the money it was currently tendering the government but also the money it had deposited in April and May.

Had Carriage House designated how it wished its deposits to be allocated when it made the deposits, or had it so designated before the time for filing its second quarter return had expired, the defendant would have had no choice but to accept the designation and apply the deposits accordingly. *O'Dell* v. *United States*, 326 F.2d 451, 456 (10th Cir. 1964); Internal Revenue Manual § 5514.34.[3] See also Treasury Regulation [26 C.F.R.] § 31.6302(c)–3(iii).[4] It has

2. The regulation provides, in part, as follows:

(a) *Federal Insurance Contributions Act and income tax withheld from wages*—(1) *Quarterly or annual returns.* Except as provided in subparagraph (4) of this paragraph each return required to be made under Section 31.6011(a)–1, in respect of the taxes imposed by the Federal Insurance Contributions Act, or required to be made under Section 31.6011(a)–4, in respect of income tax withheld, shall be filed on or before the last day of the first calendar month following the period for which it is made . . . .

3. The section provides, in part, as follows: In determining what constitutes the trust fund portion of the outstanding tax liability,

any payments which have been applied to an account will be considered to be in payment of assessed penalty and interest, and of the employer's portion of the FICA or RRTA tax liability, unless, with respect to any voluntary payment, the employer has indicated that the payment is to be otherwise applied.

4. The regulation provides, in part, as follows: Each employer making deposits pursuant to this section shall report on the return for the period with respect to which such deposits are made information regarding such deposits in accordance with the instructions applicable to such return and pay therewith (or deposit by the due date of such return) the balance, if any, of the taxes due for such period.

been held, however, that this power of designation, while absolute if timely, evaporates upon the expiration of the relevant period for filing a timely return. *Liddon* v. *United States*, 448 F.2d 509 (5th Cir. 1971); *Hewitt* v. *United States*, 377 F.2d 921 (5th Cir. 1967); *Datloff* v. *United States*, 370 F.2d 655 (3d Cir. 1966); *Carroll* v. *United States*, 67–2 U.S.T.C.Para. 9656 (S.D. N.Y.1967). The Internal Revenue Service was required by neither the case law nor the regulations to stay its allocation of the deposits until Carriage House decided to make a designation. Indeed, upon the expiration of the proscribed period for filing the second quarter return, the deposits were converted into tax payments by operation of Treasury Regulation [26 C.F.R.] § 31.6302(c)(1)(a)(iv).[5] The government's allocation of the May and June deposits to both the trust and non-trust fund liabilities of April and May—leaving partially unpaid by Carriage House its June trust fund liability and wholly unpaid its June non-trust fund liability—was therefore a lawful allocation, binding upon Carriage House and, for purposes of I.R.C. §§ 6671 and 6672, upon plaintiff, its responsible officer.

■ This result is not altered by plaintiffs' argument that the words which Carriage House typed on the reverse side of the August 25, 1970, check created a binding contract between Carriage House and the government which the government is now precluded from attacking. Tax liabilities are governed by laws and regulations designed to give notice to taxpayers as well as the government of the relevant liabilities under any particular set of facts. Carriage House's attempt to alter these rules by words on the reverse side of a check tendered in partial payment of its liabilities must fail. Further, the "choice" which Carriage House presented the government was no real choice at all. If it cashed the check, plaintiff says, the government was bound by the writing, thereby in effect altering the relevant law and regulations which are designed to apply to all taxpayers. If it did not cash the check, it risked having the check become worthless in light of Carriage House's pending financial instability. Rather than taking either of these courses, the government cashed the check and applied the money as directed on the reverse side, but declined to apply the directions retroactively to the May and June deposits. The Court is of the opinion and so holds that the directions on the reverse side of the check were not binding upon the Internal Revenue Service insofar as they applied to the May and June deposits, and that IRS therefore acted lawfully in applying the deposits to both trust and non-trust fund liabilities of Carriage House. Cf. *Patterson* v. *Commissioner*, 25 T.C.M. 1132 (1966) (holding that a notation on a check which stated "1961 Income Tax, Penalties and Interest in Full" did not bind the government); *Batcheller* v. *Commissioner*, 5 T.C.M. 746 (1946) (holding that a notation on a check which stated "Income tax 1941 in full" did not bind the government).

■ Having determined that the plaintiff did fail to pay over trust fund monies for the relevant quarter, the only question remaining is whether this failure was willful within the meaning of I.R.C. § 6672. The meaning of willfulness under this section is not the same as it is in the criminal law; the lan-

---

5. The regulation provides, in part, as follows:

*Time deemed paid.* In general, amounts deposited under subdivision (iii) of this subparagraph shall be considered as paid on the last day prescribed for filing the return in respect of such tax (*determined without regard to any extension of time for filing such return*), or at the time deposited, whichever is later. For purposes of section 6511 and the regulations thereunder, relating to period of limitation on credit or refund, if an amount is so deposited prior to April 15th of a calendar year immediately succeeding the calendar year which contains the period *for which such amount was so deposited*, such amount shall be considered as paid on such April 15th.

guage which courts have used is not whether the responsible officer had the intent to defraud or deprive the government of taxes, but rather whether his omission to pay was intentional, deliberate, conscious, voluntary, knowing, non-accidental. See 22 A.L.R.3d 8, 82–88 and cases cited therein. Many courts have grafted a test of reasonableness upon the willfulness element of § 6672. See 22 A.L.R.3d 8, 88–96 and cases cited therein. The weight of authority is that the burden of proof as to willfulness, as with other elements of the case in a suit for refund, is upon the taxpayer. See *Horwitz* v. *United States*, 236 F.Supp. 812 (S.D.N.Y.1964) *aff'd* 339 F.2d 877 (2d Cir. 1965); *Schweitzer* v. *United States,* 193 F.Supp. 309 (D.Neb.1961); *Kellems* v. *United States*, 97 F.Supp. 681 (D.Conn.1951).

 The parties herein have stipulated that if plaintiff were called to testify, he would testify that he prepared the August 25, 1970 check and its endorsement in accordance with and in reliance upon the advice of counsel. Insofar as this Court has been able to determine, the United States Court of Appeals for the Sixth Circuit has spoken concerning the willfulness element of I.R.C. § 6672 only to the extent of saying that if the responsible officer

> was aware of the fact that the taxes were unpaid, and, possessing the power and responsibility to pay them, failed to do so, then he is liable for the penalty of section 6672 notwithstanding his lack of malice or wrongful purpose.

*Braden* v. *United States*, 442 F.2d 342, 344 (6th Cir.), *cert. denied* 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971). The stipulation concerning plaintiff's reliance upon advice of counsel is as follows:

> Affiant further says that I consulted with counsel, to-wit: Arnold O. Zacks, an attorney at law, after June 30, 1970 and prior to July 30, 1970, and I was advised that the final check should be prepared with an endorsement containing substantially the

same language and prepared in the same manner as was in fact endorsed on the check dated August 25, 1970; that on or about July 30, 1970, I signed the Form 941 for the period ending June 30, 1970 and knew the total corporate liability when I executed the tax return and that I issued the instructions on how to prepare the final check in accordance with and in reliance upon the advice of counsel.

Courts have recognized that a reasonable reliance upon advice of counsel may negate the willfulness element of § 6672. *See, e. g., Newsome* v. *United States*, 431 F.2d 742, 748 n. 12 (5th Cir. 1970); *Gray Line Company* v. *Granquist*, 237 F.2d 390, 395 (9th Cir. 1956), *cert. denied* 353 U.S. 911, 77 S.Ct. 667, 1 L.Ed. 2d 664 (1957). But courts have also been careful, before permitting the advice of counsel to preclude liability for the responsible corporate officer, to determine that the information furnished by counsel in fact constituted reasonable cause for the officer to believe that he was fulfilling his responsibilities under the statute. See *Newsome* v. *United States, supra* at 747. Thus, in reversing the District Court's determination that a responsible officer had reasonably relied upon advice of counsel, the United States Court of Appeals for the Fourth Circuit in *Cross* v. *United States*, 311 F.2d 90, 94 (4th Cir. 1962) stated:

> In previous years, as already noted, taxpayer Cross had recognized the excise. He was led to renounce further acknowledgment by a casual conversation with an unidentified lawyer in Florida. Before denying the obligation, he obtained an opinion from the Internal Revenue Service. It advised him of the duty to collect.

> Taxpayer's adoption of a different course, while by no means morally culpable, was deliberate. He preferred to take his chances in litigation. Though all in good faith, nonetheless he thereby 'willfully' failed to follow the statute. He does not escape the penalty.

Mr. Hirsch does not assert that he was unaware of his duty to pay over withheld trust fund monies; he had, in fact, caused Carriage House to pay over to the Internal Revenue Service the deposits of May and June, 1970. There was no opinion from the I.R.S. in this case as there was in *Cross*, but the fact that Mr. Hirsch approached an attorney and that he caused the August 25, 1970, check to be endorsed with the language set out earlier in this opinion is sufficient in the judgment of this Court to indicate that Mr. Hirsch knew a potential problem existed concerning the payment of Carriage House's trust fund liability and that, in the words of *Cross*, he "preferred to take his chances in litigation." In so holding, I bear in mind that it is Mr. Hirsch's burden in this suit for refund to demonstrate that his failure to pay over the withheld taxes was not willful.

Judgment for defendant in the suit for refund. Judgment for defendant on its counterclaim, in the amount of $960.-29 plus interest at six percent (6%) per annum from December 10, 1971. Defendant to recover its costs herein.

So ordered.