**In re HANNAN TRUCKING, INC., Debtor.**

**HANNAN TRUCKING, INC., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 380–00493–F. Adv. No. 381–0060.**

United States Bankruptcy Court, N. D. Texas, Dallas Division.

Oct. 21, 1981.

Kembele White, Dallas, Tex., for debtor Hannan.

M. Bruce Peele, Tax Div., Dept. of Justice, Dallas, Tex., for Internal Revenue Service.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Hannan Trucking, Inc., the debtor-taxpayer, filed this adversary proceeding against the United States of America, challenging the application made by Internal Revenue Service of payments of delinquent taxes by the taxpayer. Nonjury trial was conducted on September 29, 1981. This factual summary constitutes the findings required by Rule 752.

The principal stockholder and officer of the debtor corporation was Jack M. Hannan. On May 12, 1977, the corporation's unpaid liability for employment taxes for the periods beginning with the third quarter of 1974 and ending with the fourth quarter of 1976 totalled $119,252.00. Proposed assessment of 100% penalty pursuant to § 6672 of the Internal Revenue Code was furnished to Jack M. Hannan, individually, and on July 12, 1977, he executed "Agreement [1] to Assessment and Collection of One Hundred Percent Penalty." Those penalties totalled $63,749.64, according to the "Report of Corporation's Unpaid Tax Liability" which contained the above mentioned agreement to assessment of 100% penalty.

---

1. "I consent to the assessment and collection of the total penalty shown, which is equal either to the amount of Federal Employment taxes withheld from employee's wages or to the amount of federal excise taxes collected from patrons or members and which were not paid over to the government by the corporation named above; and I waive the privilege of filing a claim for abatement after assessment."

Dated: 7–12–77

/S/ Jack M. Hannan

On that same date of July 12, 1977, Jack M. Hannan, as President of the taxpayer corporation, executed a "Payment Agreement" on a form promulgated by Internal Revenue Service. That agreement reflected that the amount of taxes owed by the corporation totalled $117,272.09, on which the corporation agreed to pay $2,000.00 on July 30, 1977, and $2,000.00 on the 15th day of each month thereafter (with provisions for increased payments) until the corporation's liability had been paid in full.

The corporation was represented by counsel during the negotiations with the cognizant officials of Internal Revenue Service in the Dallas District which led to the execution of the "Consent to Assessment of One Hundred Percent Penalty" by Jack M. Hannan, individually, and to the "Payment Agreement" by the corporation. The subject of allocation of payments which the taxpayer was to make to Internal Revenue Service was not mentioned in those negotiations and the "Payment Agreement" is silent on the issue.

The taxpayer exhibited a letter[2] dated September 28, 1977, addressed to the Internal Revenue Service Center in Austin, whereby the corporation detailed the method by which the payments made, and to be made, under the "Payment Agreement" were to be allocated. As can readily be seen the instructions concerning allocation of the payments contemplated that Internal Revenue Service should first apply the payments made by the corporation to the trust fund tax liability[3]—that portion of the corporation's total liability for which Jack M. Hannan, individually, was also liable under the 100% penalty assessment.

The corporation made payments under the agreement of July 12, 1977, totalling $60,200. Internal Revenue Service claims that it did not receive the letter detailing the allocation instructions. It made its own application of those payments by first applying them against the non-trust fund tax debt—the portion of the corporation's total liability for which Jack M. Hannan, individually, was not liable. In addition Internal Revenue Service applied to the non-trust fund tax liability income tax refunds totalling $8,938.63 to which Jack M. Hannan, individually, was entitled. Also, it levied upon a receivable totalling $8,284.80 due to the corporation and applied those proceeds to the non-trust fund tax liability.

---

2. September 28, 1977
Internal Revenue Service
Box 2925
Austin, Texas 78783
  Re: Hannan Trucking Company, 11208 Sherman, Dallas, Texas, 75229, Account # 75–1326639
Gentlemen:
  Hannan Trucking recently entered into a payment agreement with the collection division in Dallas in connection with the taxes reflected on Exhibit A. That agreement has been forwarded to the service center for monitoring.
  Pursuing to that agreement the taxpayer has made payments of $8,000.00. Copies of the checks are attached.
  You are hereby directed to apply the payments already received and all future payments in the following order:
  (1) Payments already received should be applied to the trust fund and non-trust fund tax liability for the third and fourth quarters of 1974. Payments should not be applied to penalty or interest amounts due.
  (2) Payments should then be applied to the delinquent trust fund tax liability beginning with the most recent quarter and working back until all trust fund tax liability has been paid.

  (3) Payments thereafter should then be applied to any other liability which exists for the corporation for which a 100% penalty assessment can be made beginning with the most recent quarter and working backwards.
  (4) Payments should then be applied to the non-trust fund tax liability beginning with the oldest account and working forward.
  (5) Payments should thereafter be applied to penalty and interest amounts beginning with the oldest account and working forward.
  Very truly yours,
  Kemble White
KW/bgw
Enclosures:  Work sheet of tax liability
           5 checks
           Letter from I.R.S. dated 9/9/77
           Power of Attorney
CC  Hannan Trucking Company,
     Ray Bell

3. Trust fund taxes consist of withheld income tax and the employees' portion of FICA tax reflected on 941 tax returns. Non-trust fund taxes consist of the employer's portion of FICA tax and unemployment tax (FUTA).

The debtor-taxpayer contends that all of the monies paid to Internal Revenue Service by it, or which has otherwise come into the possession of Internal Revenue Service, should have been applied first to the trust fund tax liability portion of the debt, by reason of its allocation letter of September 28, 1977. It recognizes that the portion attributed to the levy represent payments involuntarily made, but contends that the agents for Internal Revenue Service had promised that no levies would be made and that the levy should be released and those monies so seized returned to it or applied against the debt pursuant to the allocation letter of September 28, 1977.

Internal Revenue Service contends that its agents had no authority to represent that no levy would be made, if in fact they did so represent. In addition, Internal Revenue Service challenges the standing of the debtor corporation to raise an issue concerning allocation of the individual's income tax refund. Further, it denies that it ever received the September 28, 1977, allocation letter, says that if it was sent it was not timely delivered, and says that there is no consideration for it. It insists that it had the right to apply the funds which it collected to the debts of the corporation least likely to be collected—the non-trust fund tax portion of the debt.

If an allocation is timely and meaningfully made Internal Revenue Service would have had no choice but to accept the designation and to apply the deposits accordingly. Internal Revenue Manual Sec. 5514.34; Treasury Regulation [26 C.F.R.] Sec. 31.-6302(c)–3(iii). For instance, the cited portion of the Manual provides, in part, as follows:

"In determining what constitutes the trust fund portion of the outstanding tax liability, any payments which have been applied to an account will be considered to be in payment of assessed penalty and interest, and of the employer's portion of the FICA or RRTA tax liability *unless, with respect to any voluntary payment, the employer has indicated that the payment is to be otherwise applied.*" (emphasis added)

For the purposes of this memorandum I find that the attorney for the debtor-taxpayer did mail the letter of September 28, 1977, to the Internal Revenue Service Center in Austin. However, there are at least three reasons why the debtor is not entitled to the requested relief.

First, the allocation was not timely made. All parties agree that the only payments which are subject to designation by the taxpayer are voluntary payments. There is a paucity of law which gives any indication as to what is meant by a voluntary payment. Webster defines the word "voluntary" as "proceeding from the will or from one's own choice or consent; acting or done of one's own free will without valuable consideration or legal obligation."

In this case the taxpayer was required by Treasury Regulation [26 C.F.R.] § 31.6071(a)–1(a) to file a return on or before the last day of the first calendar month following the end of each quarter for which taxes were due. The cases seem to agree that deposits for those taxes which are made before the liability for the taxes become fixed are voluntary payments and may be allocated. See *Hirsch v. United States*, S.D.Ohio, E.D.1975, 396 F.Supp. 170. However, once the tax return has been filed or, in the absence of a return, the tax liability is otherwise established the payment of those taxes become a legal obligation and the payments are no longer voluntary. Thus, the power of designation, while absolute if timely, evaporates upon the expiration of the relevant period for filing a timely return. *Hirsch v. United States*, supra, at page 173. In this case the applicable return for each quarter had either been filed or the amount of the tax had already been determined to be delinquent long prior to the time the allocation letter was sent on September 28, 1977. The allocation instructions were not timely made.

Second, the allocation was not meaningfully made. The attorney for the debtor-taxpayer, who sent the allocation instructions, was a former employee of the Internal Revenue Service. He knew, and had

reason to know, the strength and deficiencies of the tax collection system. In his brief and argument he points to the Service Center as being a "gigantic audit factory" which lost his letter. Because he was once a part of that system he had reason to expect that just that result would occur. He sent no copy of the letter to the agents with whom he had negotiated the settlement, although the testimony at trial reflected that the office where the IRS agent was located was in the same building in which the attorney's office was located. The agent testified at trial that the first time he heard about the allocation instructions was when he received a copy of a letter which had been mailed by someone to a Congressman. He testified that he saw the attorney in the hall and inquired as to why the allocation instructions had not been sent to him. According to the agent the thrust of the response made by the attorney was that no copy was sent to the agent, because the attorney assumed that the agent would oppose that attempt at allocation. That testimony was unchallenged, although the attorney did testify concerning other matters at the trial. Under those facts where the agent who had been responsible for the case and with whom the settlement had been negotiated was not provided with a copy of the allocation instructions, the attempt by the taxpayer for designation of payments was not meaningfully made.

Finally, there is merit in the government's position that there must be consideration for the allocation. The debtor-taxpayer had been found to be in default for ten quarters of employment taxes. Internal Revenue Service had many rights and powers which it could have exercised to attempt collection of those delinquent taxes. Instead of exercising those rights it afforded the debtor-taxpayer an opportunity to resolve the delinquencies. The debtor-taxpayer, while represented by counsel, negotiated a payment schedule which would permit the corporation to remain in business and at the same time liquidate its delinquent tax liabilities. At no time during those negotiations did the subject of allocation of the payments arise. The attorney for the debtor-taxpayer testified at the trial that the issue of allocation did not come to his mind until later. The debtor-taxpayer struck a bargain with Internal Revenue Service by the execution of the "payment agreement" in exchange for the forbearance by Internal Revenue Service of the rights and powers which it had to enforce collection. That payment agreement was silent on the issue of allocation. The debtor-taxpayer's letter of September 28, 1977, mailed more than two months after the bargain had been struck, was supported by no consideration and thus is not binding on Internal Revenue Service. *Holcomb v. United States*, 7th Cir. 1980, 622 F.2d 937, 941.

For the reasons noted above, this court concludes that the debtor-taxpayer did not and could not effectively designate the manner in which the payments under the "Payment Agreement" should be applied. That conclusion effectively moots the contention made by the debtor-taxpayer that a levy on a $8,284.80 receivable should be returned to it.

In that regard by June 4, 1980, the debtor-taxpayer had defaulted on the payment agreement. The debtor contends that it was trying to make another agreement with Internal Revenue Service. Debtor's counsel at that time—not the attorney who is presently representing the debtor—obtained an agreement from the agents with whom he was negotiating that those agents would not serve any levies until they reviewed the debtor's case. However, an account owed to the debtor by National Beef Packing Company in the sum of $8,284.80 was levied upon and the proceeds were applied to the nontrust fund tax liabilities of the corporation. At the trial the agent confirmed that he had told the debtor that he would make no levies until he reviewed the case, but that at that the levy on the National Beef Packing Company account was already in process. Thus the levy was made prior to any promise being made by the agent that no levies would be made. Counsel for Internal Revenue Service argues that the agent had no authority

to bind Internal Revenue Service in that manner and supports that argument with authorities. That position has merit. In any event, Internal Revenue Service can properly apply those proceeds to the tax liability at this time, even if it should not have initially made the levy. I perceive no basis whereby the debtor could expect those monies to be paid over to it. Certainly the trustee has not made that demand. Since there are no allocation instructions which it must follow the allocation which Internal Revenue Service has already made concerning those proceeds is proper and should not be disturbed.

■ Finally, the individual, Jack M. Hannan, appears to have just cause to challenge the application of his income tax refund to the corporate nontrust fund tax liability. However, the debtor-taxpayer does not have standing to make that challenge for him.

It is, therefore, ORDERED by the court that the complaint by the debtor-taxpayer, Hannan Trucking, Inc., against Internal Revenue Service be, and it is hereby, denied and dismissed without prejudice to the right of Jack M. Hannan, individually, to present his challenge to the application by Internal Revenue Service to the nontrust fund tax liability of the debtor-taxpayer of the income tax refund to which he would otherwise be entitled.

LET JUDGMENT BE ENTERED ACCORDINGLY.

The clerk is directed to enter this order and to furnish a copy thereof to each attorney of record.