**In re VERMONT FIBERGLASS, INC., d/b/a Pettit Pools of Rutland, Debtor.**

**Bankruptcy No. 83–155.**

United States Bankruptcy Court, D. Vermont.

Aug. 10, 1987.

M. Butterfield, Candon & Butterfield, Rutland, Vt., for debtor.

D. Stefanik, U.S. Dept. of Justice, Washington, D.C., for the I.R.S.

ORDER AND MEMORANDUM DECISION ON DEBTOR'S MOTION TO DETERMINE ALLOCATION OF PROCEEDS TO PAY TAXES

FRANCIS G. CONRAD, Bankruptcy Judge.

The debtor moves this Court for an Order directing the IRS to allocate mortgage proceeds and dividends received by the IRS from the debtor, and from debtor's trustee to debtor's "Trust Fund Taxes," and not to its interest and penalty tax liability to the

IRS.[1] Because we find that debtor sufficiently directed the allocation of mortgage proceeds and the IRS did not; and because we find the IRS has failed to produce evidence to require us to exercise our discretion in its favor and against the debtor, we sustain debtor's motion to allocate proceeds and dividends received by the IRS to debtor's "Trust Fund Taxes."

## BACKGROUND

Prior to bankruptcy debtor disclosed to the IRS the existence of a mortgage and promissory note due debtor from the Church of Attunement and offered this asset in partial satisfaction of the debtor's withholding tax liability as inferentially memorialized in a letter dated July 18, 1982 from debtor's counsel to an Internal Revenue officer.[2]

At the June 3, 1987 hearing, Internal Revenue officer Nolan (presently. retired) testified that debtor's counsel voluntarily disclosed the Church of Attunement's mortgage, prior to the debtor's July 18, 1982 letter and the subsequent IRS's notice of levy. The officer also testified that the debtor fully cooperated with the IRS in its disclosures and even produced financial statements for the IRS's inspection. Because of this disclosure, the officer testified that the IRS never issued a collection summons or needed to subpoena the debtor to determine the mortgage's existence. He did not, however, adequately explain away the logical inference that debtor's pre-levy disclosures was an offer to the IRS for an assignment of debtor's receivable collection, and he produced no evidence that the

IRS would have discovered this receivable without the debtor's voluntary disclosure.

An IRS "Notice of Levy", dated February 16, 1983, was served by the IRS on the Church of Attunement. Debtor was never served with this "notice of levy"; however, debtor's counsel conceded that he had received a courtesy copy.

On August 5, 1983, debtor filed its voluntary petition under Chapter 11 of Title 11 of the United States Code.

During December of 1983, proceeds from the Church of Attunement mortgage and promissory note were received by debtor's attorney. The cashiers check dated December 9, 1983 was made payable to "Vermont Fiberglass Corp. & Internal Revenue Ser." and in the amount of $8,794.34.

On February 2, 1984, IRS filed its proof of claim for taxes and sought: $84,889.02 for secured claims; $29,675.86 for unsecured priority claims; and, unsecured general claims of $2,524.61 for penalty. The IRS filed an amendment to their proof of claim on August 20, 1984, and sought: $78,898.43 for secured claims; unsecured priority claims of $31,261.39; and unsecured general claims for penalty of $2,031.81.

On March 8, 1984, debtor's case was converted to a Chapter 7 proceeding and, after an April 5, 1984 hearing, this Court dismissed debtor's motion to reconsider the conversion.

On March 19, 1984, debtor's counsel sent the IRS the December 9, 1983 cashier's check from the mortgagee, together with a letter stating, *inter alia:*

---

1. We originally entered an Order, on July 1, 1986, granting debtor's motion, but vacated it at the request of the IRS because debtor failed to obtain jurisdiction over the IRS. The instant motion is a continuation of our grant to debtor allowing it to renew its motion after proper service.

2. The July 28, 1982 letter from debtor's counsel to the IRS officer stated:
   "I enclose as promised an original promissory note of Brian Holehouse, principal in Sunshine Recreation Products, Inc., in Cheektowaga, New york. No payments have been made on the note. The note, although undat-

ed, makes reference to the first payment being made on April 1, 1981. No payments have been made to date.
   Also enclosed please find all material I have on the Church of Attunement, or Gatehouse, over in New York State. I do not see anything in my file concerning the assignment of the mortgage. It is my understanding however that there is recorded in the Land Records over in Lake George the assignment of the mortgage to Vermont Fiberglass, Inc. Also enclosed please find documentation of Vermont Fiberglass, Inc.'s lien against Frank Plimpton of Springfield, Vermont."

"This check is being turned over to the Internal Revenue Service without prejudice to Vermont Fiberglass's rights to contest the manner in which the funds are being applied and to which accounts the funds are being applied."

When questioned about the delay in forwarding the proceeds, Debtor's counsel was unable to satisfactorily explain why the cashier's check was not tendered to the IRS while the debtor was in a Chapter 11 proceeding.

On May 4, 1984, this Court entered an Order appointing a trustee, and on May 24, 1984, the trustee was authorized, by an Order of even date, to conduct the debtor's business. The trustee's Report and Account approved without objection, after notice and hearing, the IRS's allowed claim of $108,857.12. A first and final pro rata dividend of $29,071.99 as a tax priority pursuant to 11 U.S.C. § 507(a)(7) was allowed. *Order For Disbursements And Dividend Sheet*, Francis G. Conrad, B.J., July 1, 1986, at page 3. After the July 1, 1986 Order for Disbursements and Dividend Sheet, and at the close of the Chapter 7 proceeding, the trustee made a payment of $29,071.99 to the IRS for federal employment taxes.

At hearing, the IRS produced no evidence on how it had allocated either the mortgage proceeds or the trustee's distribution to the debtor's tax liabilities.

The debtor's principal officer, at an earlier hearing, testified that one of his goals, and those of the debtor in filing the original voluntary bankruptcy petition, was to make full payment to the IRS of all debtor's back taxes.[3]

## QUESTION PRESENTED

The crucial factual determination is the voluntariness of the debtor's pre and postpetition actions, and whether the debtor, the IRS, or this Court may direct to which accounts, ie. "Trust Fund Tax," interest, and/or penalty, the IRS must credit proceeds derived from the offered mortgage or the trustee's Chapter 7 distribution. As we understand it, the basic rule for the application of payment is: in the absence of a creditor's enforced collection measure, the debtor may direct the payments application; if he fails to do so, the right devolves upon the creditor; if the creditor fails to allocate in a timely manner, the Court will make the application according to its own notion of justice. *See National Bank of the Commonwealth, of New York City v. Mechanics' National Bank*, 94 U.S. (4 Otto) 437, 439, 24 L.Ed. 176 (1877).

## INTRODUCTION

### A. *Trust Fund Doctrine*

"Trust Fund Taxes" are those taxes withheld by employers from employees' wages that are required to be held in trust for the United States Treasury pursuant to 26 U.S.C. § 7501.[4] When making payments of wages to employees, 26 U.S.C. § 3402 requires employers to deduct and withhold income taxes.[5] Liability for pay-

---

**3.** Not uncommon to the instant proceeding, the IRS has served debtor's principal officer with a 26 U.S.C. § 6672 "100% penalty." The extent of his personal liability is directly proportionate to the allocation of the debtor's and the trustee's tender.

**4.** 26 U.S.C. § 7501 provides: **§ 7501 Liability for taxes withheld or collected. "(a) General rule.** Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from

which such funds arose. **(b) Penalties.** For penalties applicable to violations of this section, see sections 6672 and 7202."

Since the withheld taxes are required to be held in trust under Section 7501, they are often denominated as "Trust Fund Taxes." Other corporate tax liabilities, such as corporate income tax and the employer's share of social security taxes, are generally referred to as "Non-Trust Fund Taxes." *In re B & P Enterprises, Inc.*, 67 B.R. 179, 181 (Bkrtcy.W.D.Tenn.1986).

**5.** 26 U.S.C. § 3402(a) provides in part: **§ 3402 Income tax collected at source." (a) Requirement of withholding.** *(1) In general.* Except as otherwise provided in this section, every employer making payment of wages shall deduct and withhold upon such wages a tax determined

ment of the tax required to be deducted and withheld is placed upon the employer under 26 U.S.C. § 3403[6]. An employee receives credit for the withheld taxes regardless of whether the employer actually remits the "Trust Fund Taxes" to the government. *Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct 1778, 1783, 56 L.Ed.2d 251, 259 (1978).

If the employer fails to remit the taxes, then the government may look to a "responsible person" for the willful nonpayment for recourse. *Uslife Title Ins. Co. of Dallas v. Harbison,* 784 F.2d 1238, 1243 (5th Cir.1986). Congress has provided the IRS with a powerful tool for recourse to prevent a presumed loss to the Treasury, 26 U.S.C. § 6672.[7] Section 6672 imposes personal liability upon: "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect ... shall, in addition to other penalties provided by law, be liable to a penalty to the total amount of the tax ... not collected ... and paid over." *Id.*

A "person" is statutorily defined by 26 U.S.C. § 6671(b),[8] however, for § 6672 liability purposes, case law developed this statutory definition into the term of art, "responsible person." *Slodov v. United States,* 436 U.S. 238, 245 n. 7, 98 S.Ct 1778, 1784 n. 7, 56 L.Ed.2d 251, 260–61 n. 7 (1978). A "responsible person" is one who has the power, duty, and control over the collection and remittance of "trust fund"

taxes. *Monday v. United States,* 421 F.2d 1210, 1214 (7th Cir.1970), *cert. denied,* 400 U.S. 821, 91 S.Ct 38, 27 L.Ed.2d 48 (1970); *Werner v. United States,* 374 F.Supp. 558, 562 (D.Conn.1974) *affirmed per curiam* 512 F.2d 1381, 1382 (2d Cir.1975). Liability of a "responsible person" is both joint and severable from the corporate employer, *United States v. Huckabee Auto Co.,* 783 F.2d 1546, 1548–49 (11th Cir.1986), since a Section 6672 action is:

"[N]ot one against a transferee of assets of the corporation, or one of a derivative character.... it is quite plain from the terms of the statute that the Congress intended that funds collected for these taxes be treated as a trust fund and that persons responsible for their paying over should be individually liable, as well as the corporation, for their diversion."

*Spivak v. United States,* 370 F.2d 612, 615 (2d Cir.1967), *cert. denied* 387 U.S. 908, 87 S.Ct 1690, 18 L.Ed.2d 625 (1967) (citations omitted). While the IRS need not exhaust its collection efforts on the corporate employer prior to assessing a "responsible person", *Datlof v. United States,* 370 F.2d 655, 656 (3d Cir.1966), *cert. denied* 387 U.S. 906, 87 S.Ct 1688, 18 L.Ed.2d 624 (1967), "[T]here certainly must first be a liability running from the employer for such taxes." *In re Turchon,* 62 B.R. 461, 465, 14 CBC.2d 1370 (Bkrtcy.E.D.N.Y.1986).

Although plainly termed a "penalty" by Congress, the liability imposed under 26 U.S.C. § 6672 has not been literally applied

in accordance with tables or computational procedures prescribed by the Secretary ..."

There is a similar provision governing the collection of the employee's portion of social security taxes, Federal Insurance Contribution Act (FICA), 26 U.S.C. § 3102. Section 3102(a) places the duty of collection upon the employer "[B]y deducting the amount of the tax from the wages as when paid." 26 U.S.C. § 3102(a).

**6.** 26 U.S.C. § 3403 provides: **§ 3403 Liability for tax.** "The employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter, and shall not be liable to any person for the amount of any such payment."

There is a similar provision in 26 U.S.C. § 3102(b), for FICA taxes.

**7.** 26 U.S.C. § 6672 provides in pertinent part: **§ 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax. (a)** General

**rule.** Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over ..."

**8.** 26 U.S.C. § 6671(b) provides: **§ 6671. Rules for application of assessable penalties. (b) Person defined.** The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

by the Courts, for Bankruptcy Code purposes, to mean a penalty, but rather "penalty" is considered as a mere revenue collection device, *United States v. Sotelo,* 436 U.S. 268, 275, 98 S.Ct 1795, 1800, 56 L.Ed.2d 275 (1978); *United States v. Huckabee Auto Co.,* 783 F.2d 1546, 1548 (11th Cir.1986); *Monday v. United States,* 421 F.2d 1210, 1216 (7th Cir.1970), *cert. denied,* 400 U.S. 821, 91 S.Ct 38, 27 L.Ed.2d 48 (1970), to accomplish the Congressional purpose of protecting it's tax. *Spivak v. United States,* 370 F.2d 612, 616 (2d Cir. 1967), *cert. denied* 387 U.S. 908, 87 S.Ct 1690, 18 L.Ed.2d 625 (1967). Thus, a § 6672 "penalty" is a tax for Bankruptcy Code purposes,[9] for which the "responsible person" is potentially liable for 100% of the taxes not collected, accounted for, and paid over to the Treasury.[10]

### B. · Allocation of payment doctrine

■ As a general rule, if a debtor makes a voluntary payment to a creditor, then the debtor may designate to which account the payments must apply and the creditor is bound to honor the debtor's designation. If the debtor fails to designate a payment, then the creditor may designate to which debt, (ie., specific invoice, principal, interest, penalty, etc.), the collected payment will apply. If both the debtor and the creditor fail to preserve their respective designation rights, then the court will decide the application:

> "The rule settled by this court as to the application of payment is, that the debtor or party paying the money may, if he chooses to do so, direct its appropriation; if he fail, the right devolves upon the creditor; if he fail, the law will make the application according to its own notions of justice. Neither party can make it after a controversy upon the subject has arisen between them, and *a fortiori* not at the trial."

*National Bank of the Commonwealth of New York City v. Mechanics' National*

---

**9.** The distinction between a tax and a penalty is important, since, for Bankruptcy Code purposes, penalties are usually dischargeable, 11 USC § 523(a)(7), while most taxes are not, 11 USC § 523(a)(1).

**10.** The IRS has an expressed long standing policy of using the § 6672(a) penalty to collect the delinquent taxes only once:

> "The 100–percent penalty ... will be used only as a collection device.... [T]he 100–percent penalty may be asserted ... whenever such taxes cannot be immediately collected from the corporation itself ... The withheld income ... will be collected only once, whether from the corporation, from one or more responsible persons, or from the corporation and one or more of its responsible persons. Collection of the withheld income ... is achieved when the Service's right to retain the amount collected is established. An abatement of the tax assessment against the corporation will be made to the extent that the related 100–percent penalty assessment is paid, after expiration of the period for filing a claim by the person(s) from whom the 100–percent penalty was collected."

Policies of the IRS Handbook, P-5-60 (approved May 30, 1984), *reprinted in* 1 Internal Revenue Manual, Administration (CCH) at 1305–15. We note that in this jurisdiction, that while Revenue rulings issued by the IRS "are entitled to great deference, and have been said to 'have the force of legal precedents unless unreasonable or inconsistent with the provisions of the Internal

Revenue Code.'" *Amato v. Western Union Intern., Inc.,* 773 F.2d 1402, 1411 (2d Cir.1985) (citing *Bob Jones Univ. v. United States,* 461 U.S. 574, 596, 103 S.Ct 2017, 2031, 76 L.Ed.2d 157 (1983)), *cert. dismissed* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986), that "deference paid to Treasury regulations is not boundless." *Goodson-Todman Enterprises, LTD. v. C.I.R.,* 784 F.2d 66, 74, 84 T.C. 255 (2d Cir.1986). *Contra, Stubbs, Overbeck & Associates v. United States,* 445 F.2d 1142, 1146–47 (5th Cir.1971) (Revenue Rulings and Policies do not have the force and effect of law as they are merely opinions of a lawyer). With either view we don't believe revenue rulings support an exception to the allocation rule enunciated in *National Bank of the Commonwealth, of New York City v. Mechanics' National Bank,* 94 U.S. (4 Otto) 437, 439, 24 L.Ed. 176 (1877). *See Reconstruction Finance Corporation v. McCormick,* 102 F.2d 305, *cert. denied,* 308 U.S. 558, 60 S.Ct. 90, 84 L.Ed 469 (1939) (rights of allocation may be derogated by rights created by statute).

The IRS has represented to this Court and other Courts: that it intends to collect the tax amount only once; once the taxes are paid in full, the IRS will cease its collection efforts; and the government retains only one full satisfaction of the unpaid withholding taxes. *United States' Memorandum in Opposition to Debtor's Motion to Determine Tax Liability,* pages 4–5, (filed February 9, 1987). *See, United States v. Huckabee Auto Co.,* 783 F.2d 1546, 1548 (11th. Cir.1986) (citing *United States v. Sotelo,* 436 U.S. 268, 279 n. 12, 98 S.Ct 1795, 1802 n. 12, 56 L.Ed.2d 275 (1978) (citations omitted)).

*Bank of Trenton, New Jersey,* 94 U.S. (4 Otto) 437, 439, 24 L.Ed. 176, 178 (1877) (citations omitted). *See also* 60 Am.Jur.2d *Payment* §§ 80, 87; 70 C.J.S. *Payment* §§ 36, 37.

### C. *IRS's policy application of the allocation of payment doctrine to the Trust Fund Doctrine*

The government argues that, at least as far as § 6672, Title 26 of the United States Code is concerned, the IRS has the discretion to apply payments, involuntarily collected from the debtor, to the portion of the debtor's tax liability in the manner which

11. The government argues:
"When the corporation's payment is involuntary, it is the policy of the Internal Revenue Service to apply the payment to the non-trust fund taxes due the Government ... This policy is consistent with the purpose of Section 6672 liability—to encourage responsible persons to hold the taxes that are collected from employees' wages in trust and to see that the withheld taxes are paid over to the Government when they are due. It is also consistent with the purpose of the rule allowing a debtor to designate application of a payment only when he makes a voluntary payment—to encourage debtors to make voluntary payments without resort to court proceedings or administrative levies."
*United States' Memorandum in Opposition to Debtor's Motion to Determine Tax Liability,* pages 7–8, (filed February 9, 1987) (citations omitted).

12. Revenue Ruling 73–305 states in part:
"Where additional taxes, penalty, and interest are assessed for one or more taxable periods against a taxpayer ... a partial payment thereon tendered to and accepted by the Internal Revenue Service with specific directions by the taxpayer as to its application will be applied in accordance with such directions ..."
"Where additional taxes, penalty, and interest are assessed for one or more taxable periods and there are no specific instructions as to the application of the partial payment tendered by the taxpayer, the amount of the payment will be applied by the Service to tax, penalty, and interest, in that order, for the next succeeding period, until the payment is absorbed."
We note, however, the final paragraph of Revenue Ruling 73–305 expressly states that it does not apply, *inter alia,* to withheld employment taxes. *Payne v. United States,* 500 F.Supp. 571, 573 (D.Colo.1980). Revenue Ruling 73–305 was modified by Revenue Ruling 79–284.
Revenue Ruling 79–284 states in part:

best serves the government's interest,[11] unless the taxpayer has made an explicit, timely, and voluntary designation that the payments be allocated to a particular debt.[12]

The IRS further argues that the only reason the debtor seeks to designate the debtor's and the trustee's payment is to reduce the personal liability of one of debtor's officers who may also be a "responsible person" with personal § 6672 liability. In that event, the government would be deprived of its protection from loss of revenue that § 6672 was designed to provide.[13]

"Rev.Rul. 73–305 applies to withheld employment taxes ... where the taxpayer provides specific written instructions for the application of a voluntary partial payment. If no designation is made by the taxpayer, the Internal Revenue Service will allocate partial payments of withheld employment taxes and collected excise taxes to tax, penalty, or interest in a manner serving its best interest." The tax code contains no provisions regarding the allocation of voluntary payments. *In re Technical Knockout Graphics, Inc.,* 68 B.R. 463, 465 (Bankr. 9th Cir.BAP 1986).

13. The IRS noted:
"Since the corporate debtor is required to pay both its trust fund and its non-trust fund liabilities, it really has no interest in which are satisfied first. The only parties with an interest in the designation are the responsible persons, who hope to reduce their liability under Section 6672 by precluding the Government from applying corporate payments to non-trust fund taxes. If the total tax liability is not paid and any sums paid by the trustee are applied to the trust fund liabilities, only the unpaid balance of the trust fund liabilities can be collected from the responsible persons. In the absence of the designation, of course, the payments of the corporation would be applied first to the non-trust fund taxes, leaving a larger balance due from the responsible persons under Section 6672."
*United States' Memorandum in Opposition to Debtor's Motion to Determine Tax Liability,* page 12, n. 7 (filed February 9, 1987).
As one Court noted:
"In the present case, the bulk of the taxes owing to the IRS are 'Trust funds.' By designating the allocation of payments to the IRS, the debtor company is able to reduce the personal liability of the corporate member responsible for maintaining the 'trust funds'. Conversely, the IRS desires to allocate the payments to nontrust fund liabilities, leaving in place the personal liability of the corporate member, as well as the '100–percent penalty.'"

## CLAIMS OF THE PARTIES

There are two separate funds from which the debtor seeks this Court's direction to which accounts the IRS must credit: A. The pre-petition mortgage which debtor claims to have offered to the IRS prior to the IRS's levy, although the proceeds from the mortgagor's check, dated during debtor's Chapter 11 proceeding, was not tendered to the IRS by the debtor's counsel until after the IRS's levy, proof of claim, and the debtor's conversion to Chapter 7 (hereinafter referred to as mortgage proceeds); and, B. The trustee's Chapter 7 payment to the IRS, which was made pursuant to this Court's Order for disbursements (hereinafter referred to as trustee's Chapter 7 distribution).

### A. Mortgage Proceeds

*IRS's position on the mortgage proceeds*

The IRS's first position is that the July 28, 1982 letter, from the debtor's counsel to the IRS, was not a pre-petition assignment or offer of proceeds, but only a letter from a taxpayer with information concerning the location of debtor's assets. The IRS's pre-petition levy on the debtor's mortgagor was an "enforced administrative collection measure" which occurred prior to the debtor's tender of the mortgage proceeds. Thus, the debtor's tender was an involuntary response to the levy that now enables the IRS to apply the proceeds to any account it chooses. Additionally, the IRS's levy argument would render any post-levy tender involuntary whether or not the debtor made the payment during a Chapter 11 or a Chapter 7 proceeding, and whether or not the debtor had offered or assigned the mortgage pre-levy to the IRS;

The IRS's second position is that even if there was a pre-petition and pre-levy assignment or offer of the mortgage proceeds from the debtor to the IRS, nevertheless, payment occurred after the debtor's case was converted from a Chapter 11 to a Chapter 7 proceeding, and payments made during a Chapter 7 liquidation proceeding are involuntary.[14] Additionally, the IRS argues the attempted designation was not contemporaneous with debtor's tender.

*Debtor's position on the mortgage proceeds*

Debtor claims that it voluntarily offered the mortgage to the IRS prior to both of the latter's pre-petition levy and post-petition proof of claim. Since the debtor had voluntarily made the offer prior to any governmental "seizure", then debtor has the right to request the Court to require the IRS to allocate the payment to the debtor's trust fund liabilities;

Debtor further argues that the fact that the IRS received the December 9, 1983 mortgagor's cashier's check during the debtor's Chapter 7 proceeding is irrelevant, because debtor's counsel received the check while under a reorganization Chapter 11

---

*In re Technical Knockout Graphics, Inc.,* 68 B.R. 463, 465 (Bkrtcy. 9th Cir.BAP 1986).

**14.** The IRS acknowledged:
"Since the payment was made in the Chapter 7 proceeding, the question arises as to whether the payment was in violation of the automatic stay."
*United States' Supplemental Brief in Opposition to Debtor's Motion to Determine Tax Liability,* page 3, (filed March 19, 1987).
We need not decide the outer boundaries of the bankruptcy estate since the trustee has not moved to hold the IRS in violation of the automatic stay, nor has he requested a turnover of the mortgage proceeds. Our Decision renders it unnecessary. We also note that a mere pre-petition IRS levy does not transfer ownership to the IRS. Even if the IRS had seized the mortgage proceeds, (which it had not), prior to Debtor's petition, the IRS may still be subject to the turnover requirement of 11 U.S.C. § 542(a), *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 211–12, 103 S.Ct 2309, 2317, 76 L.Ed.2d 515, 526 (1983). Nor has the IRS traced the trust fund monies or alleged that the mortgagee proceeds or the trustee's distributions were from commingled trust funds monies collected by the debtor. See, *United States v. Randall,* 401 U.S. 513, 91 S.Ct 991, 28 L.Ed.2d 273 (1971); *Slodov v. United States,* 436 U.S. 238, 98 S.Ct 1778, 56 L.Ed.2d 251 (1978). Lastly, *albeit dicta,* we believe the IRS has mischaracterized the violation of stay issue as one of debtor's payment, (made while its motion for conversion reconsideration was pending and no trustee had been appointed), when it should be the IRS's cashing and retaining the proceeds from the cashier's check, without notification to the trustee or, more importantly, without approval of this Court, that is the violation.

proceeding and the relevant test is whether the government received payment through an involuntary "seizure." Since the debtor voluntarily offered the mortgage prior to the IRS's levy, then the subsequent tender was also voluntary and was not made pursuant to a "seizure."

Additionally, debtor argues a mere levy by the IRS is not an "enforced collection measure" which would otherwise entitle the IRS to sole allocation discretion, and, in any event, this Court has the sole discretion to determine the proper allocation when the matter is first raised during a bankruptcy proceeding.

### B. Trustee's Chapter 7 Distribution

*IRS's position on the Trustee's distribution*

The IRS's premise is that payment made within any bankruptcy proceeding is involuntary. Under these circumstances, the debtor may not designate to which accounts the IRS must apply proceeds received from a bankruptcy distribution.

Alternatively, the IRS argues that a payment made as the result of a Chapter 7 distribution is involuntary because the basis of a Bankruptcy Court proceeding renders the payment involuntary.

Further, since the debtor ceases to control the debtor's Chapter 7 estate, and since the debtor seeks the designation only for the benefit of reducing the personal liability for it's "responsible" officer, then the debtor has no standing to allocate payments made by it's trustee.

*Debtor's position on trustee's distribution*

Neither Bankruptcy Court involvement nor the filing of a proof of claim constitutes the proper test for a determination of voluntariness. Rather, the controlling criteria for determining voluntariness of a payment is whether the IRS instituted Court action or an "enforced" administrative collection action which resulted in forcibly seized or levied property. Since there was no enforced administrative levy or prepetition Court Order which seized the debtor's property or compelled the debtor to act against his will prior to this Bankruptcy Court proceeding. As such, the trustee's distribution is voluntary, and this enables either the debtor or this Court to designate to which account the IRS must allocate the Chapter 7 distribution.

The debtor has standing to request this Court to determine it's tax liability upon request under 11 U.S.C. § 505(a)(1) and (c).

## DISCUSSION

### A. *Jurisdiction and core proceeding*

Although the IRS has not raised the issue whether this Court has subject matter jurisdiction over the debtor's motion to determine tax liability, we are compelled to examine this issue *sua sponte. See Schon v. United States*, 759 F.2d 614, 616, n. 3 (7th Cir.1985) (*in dicta*, noted even if government had not raised and the district court did not address the jurisdictional issue below, the 7th Circuit would consider it *sua sponte, citing, Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 109 (7th Cir.1983)).

Title 28 U.S.C. § 1334 [15] defines the scope of Bankruptcy Court subject matter jurisdiction. Pursuant to 28 U.S.C. § 157(a),[16] the District Courts may provide that any or all cases under Title 11 and any or all proceedings arising in or related to a case under Title 11 shall be referred to Bankruptcy Judges for the district. The

---

**15.** 28 U.S.C. §§ 1334(a), and (b) provides: **§ 1334 Bankruptcy cases and proceedings** "(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11. (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under

title 11, or arising in or related to cases under title 11." *Id.*

**16.** 28 U.S.C. § 157(a) provides: **§ 157 Procedures.** "(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

United States District Court for the District of Vermont has referred these cases to this Bankruptcy Court Order dated May 14, 1986.

Despite the plain meaning of "any" tax, 11 USC § 505(a)(1),[17] the legislative history implicitly limits, *albeit* broadly, the Bankruptcy Court's consideration of taxes involving either the debtor or the estate:

"The House amendment authorizes the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, *of the debtor or the estate.*"

124 Cong.Rec. H11, 110–111 (daily ed. Sept. 28, 1978) (emphasis supplied).

It is well established that the 26 U.S.C. § 6672 liability of the "responsible person" is separate and distinct from the corporate employer, and that the IRS need not exhaust its collection efforts against the employer prior to assessing the "responsible person," *Datlof v. United States*, 370 F.2d 655, 656 (3d Cir.1966) (citations omitted), *cert. denied*, 387 U.S. 906, 87 S.Ct 1688, 18 L.Ed.2d 624 (1967), however, "[T]here certainly must first be a liability running from the employer for such taxes." *In re Turchon*, 62 B.R. 461, 465 (Bkrtcy.E.D.N.Y. 1986).

■ The IRS has characterized debtor's motion as one which is in reality on behalf of the debtor's principal officer, "a responsible person," and not the debtor or the estate. Since the debtor's principal officer is a nondebtor, the jurisdiction of the Bankruptcy Court does not extend to separate tax liabilities of nondebtor-"responsible person." *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1549 (11th Cir.1986); *MDFC Equipment Leasing Corp. v. Robbins (Matter of Interstate Motor Freight System)*, 62 B.R. 805, 808–09, CCH Bankr. Case Rpt., paragraph 71237 (Bkrtcy.W.D. Mich.1986); *Bowen Industries, Inc. v. United States*, 61 B.R. 61, 64 (W.D.Tex. 1986). We acknowledge that if the debtor is successful in its request for allocation then this would also be a benefit to the nondebtor-"responsible person," (since his liability would be reduce pro-tanto), however, our principal concern is not with the nondebtor, a third party who is not before us, but rather whether the Court may allocate or the debtor may request a determination of its own tax liability and payment allocation. See, *First National City Bank v. Kline*, 439 F.Supp. 726, 729 (S.D.N.Y. 1977) ("Where, as here, moneys are repaid under judicial order, the court has the exclusive authority to apply the funds.").

This Court has subject matter jurisdiction over the debtor's instant motion to determine it's own tax liability and the allocation of payments tendered by the debtor's counsel and debtor's trustee concerning the IRS's proof of claim. *Campbell Enterprises, Inc. v. U.S. (Matter of Campbell Enterprises, Inc.)*, 66 B.R. 200, 203–04 (Bkrtcy.D.N.J.1986); *Deel v. United States (In re Deel)*, 65 B.R. 230, 231–32, 15 C.B.C.2d 1021 (Bkrtcy.W.D.Va.1986). *Cf.*, *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1549, 14 C.B.C.2d 483 (11th Cir. 1986) (Bankruptcy Court's jurisdiction extends only to determinations of the tax

---

**17.** Debtor based its "Motion to Determine Tax Liability" upon 11 U.S.C. § 505(a)(1) and (c) which provides:

**§ 505  Determination of tax liability.**

"(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

    \*    \*    \*    \*    \*    \*

(c) Notwithstanding section 362 of this title, after determination by the court of a tax under this section, the governmental unit charged with responsibility for collection of such tax may assess such tax against the estate, the debtor, or a successor to the debtor, as the case may be, subject to any otherwise applicable law."

11 U.S.C. § 505 is derived from the Bankruptcy Act sections which permitted the Bankruptcy Court to hear and determine issues concerning the legality or amount of unpaid taxes. Bankruptcy Act § 64(a)(4), 11 U.S.C. § 104(a)(4), *amended* by Bankruptcy Act § 2a(2A), 11 U.S.C. § 11a(2A) (*repealed* 1979); H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 67 (1978), *reprinted in*, 1978 U.S.Code Cong. & Ad.News 5787, at 5853, 6312.

liability of debtors and not nondebtors.); *Success Tool and Manufacturing Company v. United States (In re Success Tool and Manufacturing Company)*, 62 B.R. 221, 222–23, CCH B.L.R., 71252 (N.D.Ill. 1986) (holding it was irrelevant that IRS's collection of 100% Section 6672 liability against "responsible" nondebtor, debtor's principal officer and major shareholder, would affect the debtor's reorganization. Although nondebtor's financing was necessary for debtor's reorganization, Bankruptcy Court had no jurisdiction to enjoin the IRS at debtor's request on behalf of non-debtor); *Gennari v. United States (In re Educators Investment Corporation)*, 59 B.R. 910, 913 (Bkrtcy.D.Nev.1986) (while Bankruptcy Court has jurisdiction over debtor's tax liability, it did not have jurisdiction over the unrelated proceeding to enjoin the IRS's collection from nondebtor where the assessment or collection does not: involve bankruptcy law; affect debtor's estate or debtor's property; and could not have any affect on the bankruptcy estate).

We also hold[18] that this proceeding is a "core matter," over which this Court may enter a final order,[19] as defined in part by 28 U.S.C. § 157(b)(2) to include: matters concerning the administration of the estate;

**18.** Although not raised by the Government, we must determine whether this is a "core proceeding" or a "related proceeding" under 28 USC § 157(b)(3): "(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."  28 USC § 157(b)(3).

**19.** 28 U.S.C. § 157(b)(1) provides: "(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."

**20.** 28 USC § 157(b)(2) provides, *inter alia:* "(2) Core proceedings include, but are not limited to— (A) matters concerning the administration of the estate;

the allowance of claims against the estate; the validity, extent, or priority of liens; and, other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship.[20]

## B. *Standing*

The IRS's position is two fold: first, although not articulated, because the tax liability of the nondebtor-"responsible person" is separate and distinct from the debtor, and since it is well established that a person cannot litigate the tax liability of another, then the corporate debtor lacks standing to request allocation, (thereby reducing it's corporate officer's liability), of its payments to its trust fund liability; and, second, upon conversion from a Chapter 11 to a Chapter 7 proceeding, the debtor ceases to control the estate, therefore, only the trustee is the proper party to make such a designation because "the debtor not only lost its right to make payments within the liquidation but also it lost the right to designate those payments." *United States' Memorandum in Opposition to Debtor's Motion to Determine Tax Liability*, page 6 (filed February 9, 1987).

(B) allowance or disallowance of claims against the estate ...; (K) determinations of the validity, extent, or priority of liens; ... and (O) other proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."

*See, Deel v. United States (In re Deel)*, 65 B.R. 230, 231–32 (Bkrtcy.W.D.Va.1986) (held Bankruptcy Court had jurisdiction to hear and Chapter 7 debtors had standing to raise a dischargeability determination of responsible officer's tax liability for pre-petition corporate taxes due the IRS); *see also, Gennari v. United States (In re Educators Investment Corporation)*, 59 B.R. 910, 913 (Bkrtcy.D.Nev.1986) (Bankruptcy Court has jurisdiction to determine tax liability of debtors, 28 U.S.C. § 1334(a) & (b); 28 U.S.C. § 157(a) & (b)(2)(A); 11 U.S.C. § 505(a); and is a core proceeding under 28 U.S.C. § 157(b)(2)(B); but not over an unrelated proceeding of nondebtor's tax liability).

The standing issue is whether "the plaintiff has 'alleged such a stake in the outcome of the controversy' as to warrant [the plaintiff's] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct 1917, 1924, 48 L.Ed.2d 450 (1976) (*quoting Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct 2197, 2204–05, 45 L.Ed.2d 343 (1975)).

The standing issue, in a 11 U.S.C. § 505 and 26 U.S.C. § 6672 context, usually arises where either the debtor or the trustee seeks to litigate the tax liability of a "responsible" third party, ie. debtor's principal officer, who is a nondebtor.[21]

As noted in our discussion on jurisdiction, we are not concerned with either an injunction or litigation of a nondebtor's tax liability against the IRS, rather, we are resolving a dispute between the debtor and the IRS over an allocation of payments to the debtor's "Trust Fund Taxes." We hold it is immaterial that the resolution of this matter may also have a consequential effect on a separate and distinct tax liability of a nondebtor. Furthermore, while it is true that a debtor ceases to control the estate after a conversion from a Chapter 11 to a Chapter 7 proceeding, the debtor has a very real and personal stake in seeing that distributions are made in a fair manner which are efficacious to it's fresh start interest.

### C. *Allocation*

As previously noted, the general rule on allocation of payments concerns itself with the notions of voluntariness and timeliness. *National Bank of the Commonwealth of New York City v. Mechanics' National Bank of Trenton, New Jersey*, 94 U.S. (4 Otto) 437, 439, 24 L.Ed. 176, 178 (1877) (citations omitted).

When a taxpayer makes a "voluntary" payment to the IRS, then the taxpayer may designate, at the time of tender, the manner of allocation of such payment among its tax, penalties, and interest liabilities. *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983). *See O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir. 1964) (adopted the minority view as to involuntary payments, where some jurisdictions give the creditor the right to direct the application of involuntary as well as a voluntary payments).

If the taxpayer fails to make a timely designation, and in the absence of intervening variables discussed *infra*, then the payment is considered "involuntary" and the IRS may designate the collected payment according to it's policy[22] of maximizing the amount of assessed tax. *United States v. DeBeradinis*, 395 F.Supp. 944, 952 (D.Conn.1975), *aff'd without opinion*, 538 F.2d 315 (2d Cir.1976).

In *Amos v. Commissioner*, 47 T.C. 65 (1966), the Tax Court provided one frequently cited definition of "involuntary" in the voluntary-involuntary dichotomy:

**21.** In this setting, Courts are divided as to whether debtor has standing to litigate a solvent nondebtor's tax liability. *See eg.*, Courts finding standing: *Jon Company, Inc. v. United States (In re Jon Company Inc.)*, 30 B.R. 831, 9 C.B.C.2d 1 (D.Colo.1983); *Campbell Enterprises Inc. v. United States (Matter of Campbell Enterprises Inc.)*, 66 B.R. 200, 205 (Bkrtcy.D.N.J.1986); *Deel v. United States (In re Deel)*, 65 B.R. 230, 231–32 (Bkrtcy.W.D.Va.1986); *Herbie K'S, Inc. v. Internal Revenue Service (In re Herbie K'S, Inc.)*, 57 B.R. 468, 470–71, CCH Bankr.L.Rpt., Paragraph 70934 (Bkrtcy.W.D.La.1985); *Datair Systems Corporation v. Starkey (In re Datair Systems Corporation)*, 37 B.R. 690, 694, 11 BCD 1235, CCH Bankr.L.Rpt., paragraph 69745, 10 CBC.2d 255 (Bkrtcy.N.D.Ill.1983); *H & R Ice Company, Inc. v. United States (In re H & R Ice Company, Inc.)*, 24 B.R. 28, 9 BCD 941 (Bkrtcy.W.D.Mo. 1982). See eg., Courts concluding corporate

debtor lacks standing: *Bowen Industries, Inc. v. United States*, 61 B.R. 61, 64 (W.D.Tex.1986); *In re Arrow Transfer and Storage Co.*, 50 B.R. 726 (E.D.Tenn.1985); *Matter of Driscoll's Towing Service, Inc.*, 51 B.R. 990 (S.D.Fla.1985); *United States v. Rayson Sports, Inc.*, 44 B.R. 280 (N.D. Ill.1984).

**22.** See, note 11, *supra*. As one Court noted: "As the taxpayer is permitted to specify the allocation of a voluntary partial payment so as to minimize its total liability, it was reasonable for the IRS to adopt a rule which would reasonably be expected to minimize total liability where the taxpayer has made a voluntary payment but not specified the allocation." *United States v. Augspurger*, 508 F.Supp. 327, 330 (W.D.N.Y.1981).

"An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of *distraint or levy or from a legal proceeding* in which the Government is seeking to collect its delinquent taxes or file a claim therefore."

*Id.*, 47 T.C. at 69. (emphasis ours). In *Amos, supra*, the Tax Court expressly cited *O'Dell, supra*, 326 F.2d at 456, as the minority view, (permits a creditor to direct the application of involuntary as well as voluntary payments as "involuntary"), and applied *O'Dell* to hold that the IRS's district director could apply monies received from the taxpayer in a non-judicial setting, as the result of an IRS's levy upon the taxpayer's bank and insurance company, according to it's policy since those payments were "involuntary." [23]

■ We reject the IRS's position that a mere unilateral prepetition administrative action, such as mailing a notice of levy, or the post-petition filing of a proof of claim, will *ipso facto* transfer a subsequent debtor's request for payment allocation in bankruptcy into an "involuntary" status which would permit the government to allocate according to it's policy and prevent this Court from making the designation.

As noted by the Seventh Circuit in response to the government's contention that a claim, (submitted to a non-bankruptcy trustee in an assignment for the benefit of creditors matter), just like a levy, is an administrative action which is sufficient to render a taxpayer's subsequent payment involuntary under *Amos'* definition of involuntariness:

"We Disagree. The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual *seizure* of property or money as in a levy. No authorities support the proposition that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim or, as appears to be a logical extension of the Government's position, telephoning or writing the taxpayer to inform him of taxes due."

*Muntwyler v. United States*, 703 F.2d 1030, 1033 (7th Cir.1983) (emphasis in original).

In *Muntwyler*, a nonbankruptcy trustee, for the benefit of corporate creditors, sent monies to the IRS's on it's claim for corporate taxes. The trustee instructed the IRS to apply the monies to the corporate trust fund liabilities to reduce the 100% penalty liability of the responsible officer. The IRS refused the trustee's direction and assessed the 100% penalty against the responsible officer. The responsible officer, after tendering monies to the IRS, brought suit for a refund. The 7th Circuit upheld the District Court's refund award to the responsible officer by affirming the District Court's ruling that the trustee's payment to the IRS was voluntary and the IRS was bound by the trustee's direction.

The *Muntwyler* Court rejected the government's contention that "enforced collection measures" in the Policy State-

---

**23.** In *dicta*, the *Amos* Court acknowledged that the rule giving the debtor or creditor the right to direct the application of "voluntary" payments has no application to "involuntary" payments made in a judicial setting where neither the debtor nor the creditor has the right to designate the voluntary payments:

"Usually cases applying this rule involve judicial proceedings, such as bankruptcy, receivership, probate, or mortgage and lien foreclosures, in which the sale of property is under the umbrella of the court's supervision. In such situations the court, in its discretion, determines the application of payments according to legal and equitable principles. There is no court supervision or control over

payments received by a district director as a result of administrative collections of Federal taxes by levy or distraint."

*Amos v. Commissioner*, 47 T.C. 65, 68, n. 3 (1966). *See also, Kalb v. United States*, 505 F.2d 506, 509, 74-2 U.S.T.C. (CCH), paragraph 9766, 34 A.F.T.R.2d (P-H) 6104 (2d Cir.1974) *cert. denied* 421 U.S. 979, 95 S.Ct 1981, 44 L.Ed.2d 471 (1975) (IRS properly refused, in a non-judicial setting, "responsible" nonbankrupt corporate officer's request for allocation of refund payment, made post-corporation's bankruptcy petition, holding: "Although in other areas of the law a payor may have power to direct application of voluntary payments, we find no basis for such power in tax law.").

ment P–5–60, (see note 10 *supra* ), included any administrative action by the IRS, "We do not understand how the Government can reasonably argue that merely filing a claim for back taxes is an 'enforced collection measure'." *Muntwyler, supra,* 703 F.2d at 1033. *Accord, Pike v. United States,* 723 F.2d 232, 233 (2d Cir.1983) (IRS was not required to credit taxes collected from corporation against the responsible person's liability, "When taxes have been *forcibly collected,* as by levy, the taxpayer has no say in allocation of the monies to past due taxes." *Id.* (emphasis supplied)).

Even if we were to assume, *arguendo,* that debtor never made a pre-petition mortgage assignment offer and the debtor's request for allocation occurred after the IRS's pre-petition notice of levy, nevertheless, even at that juncture, the IRS's pre-petition actions does not rise to the level of "enforced collection measure" which would otherwise enable the IRS to allocate according to its policy and prohibit this Court from the exercise of it's equitable notions of justice.

By it's alternative argument, the IRS focuses upon the timeliness of debtor's tender, rather than debtor's pre-petition offer. The IRS argues that the debtor's mortgage proceeds payment was received by the IRS post-levy and post-proof of claim, and since it occurred while debtor was in a Bankruptcy Court proceeding, then the payment was involuntary and the IRS alone has the right to designate payments made during a "court proceeding." The IRS makes the same claim as to the trustee's distributions.

In the *United States' Supplemental Brief In Opposition To Debtor's Motion To Determine Tax Liability,* filed March 19, 1987, the IRS stated at pages 1–2: "While the United States takes the position that payments made during a Chapter 11 bankruptcy proceeding are involuntary and, as such, may not be designated, that issue does appear to arise in the instant case."

In debtor's response, debtor admitted that payments were not tendered to the IRS until March of 1984, after debtor had been converted from a Chapter 11 to Chapter 7 proceeding, "[H]owever, Debtor must insist that it *voluntarily* offered the Church of Attunement Mortgage to the IRS." Debtor's *Supplemental Memorandum,* page 1, filed March 27, 1987 (emphasis in original).

The IRS modified its March 19, 1987 filed brief (and retreated from acknowledging that Courts were in a conflict as to whether Chapter 11 payments are involuntary) because of additional facts from debtor's supplemental memorandum which would appear to cast debtor's mortgage proceeds tender and allocation reservation as occurring during debtor's Chapter 7 proceeding. *United States' Response To Debtor's Supplemental Memorandum,* filed April 8, 1987, page 2:

"Further, despite the debtor's original contention that the Internal Revenue Service received the $8,794.34 payment when it was still in its Chapter 11 proceeding, the facts now show that the Internal Revenue Service did not receive the payment until after the debtor converted to a Chapter 7 liquidation. Since the $8,794.34 payment was apparently made as a result of an Internal Revenue Service levy and since the payment was not made until the debtor was in a Chapter 7 liquidation, it is clear that the payment was involuntary."

Our holding renders unnecessary the resolution as to whether debtor's tender occurred during debtor's Chapter 11 or Chapter 7 proceeding. In either proceeding, under the present circumstances of the IRS's failure to initiate pre-petition litigation or engage in forcible pre-petition collection measures, this Court, and not the IRS, trustee, or the debtor, has the exclusive power to designate the proper allocation of payments, *albeit,* at the request of the debtor, or other party in interest.

While this Court acknowledges there is a conflict between Courts as to whether payments made by a debtor in a Chapter 11 proceeding may be considered voluntary,[24]

**24.** The following cases support the view that

transactions which occur in a Chapter 11 pro-

and the few Courts that have considered payments in a Chapter 7 proceeding have found the payments to be involuntary,[25] we need not torture *Amos, supra,* or it's common law ancestor, *National Bank of the Commonwealth of New York City v. Mechanics' National Bank of Trenton, New Jersey,* 94 U.S. (4 Otto) 437, 439, 24 L.Ed. 176, 178 (1877), to hold that mere Bankruptcy Court involvement will not carry the day for the government. The fact that the allocation controversy is before the Bankruptcy Court will not, *ipso facto,* makes debtor's or trustee's payments "involuntary" so the IRS would have had the right to allocate according to it's policy. *Compare Hineline v. Household Finance Corp.* 72 B.R. 642 (N.D.Ohio 1987), reversing and remanding *Hineline v. Household Finance Corp. (In re Hineline),* 57 B.R.

ceeding are voluntary and enable either the debtor or the Bankruptcy Court to designate: *In re Technical Knockout Graphics, Inc.,* 68 B.R. 463, 466 (Bkrtcy. 9th. Cir.BAP 1986) (affirmed Bankruptcy Court's discretion to order IRS to allocate debtor's Chapter 11 payment to reduce debtor's "trust fund" liability); *In re B & P Enterprises, Inc.,* 67 B.R. 179, 183 (Bkrtcy.W.D. Tenn.1986) (refused to adopt per se rule that mere filing of a Chapter 11 case disallows a trustee or debtor-taxpayer from allocation); *In re Energy Resources Co., Inc.,* 59 B.R. 702, 706, CCH BLR 71078 (Bkrtcy.D.Mass.1986) (concluded trustee's payment pursuant to debtor's court ordered modified confirmed reorganization plan was voluntary); *In re Lifescape, Inc.,* 54 B.R. 526, 529 (Brktcy.D.Colo.1985) (debtor's Chapter 11 reorganization plan payments to IRS were voluntary and debtor may direct IRS to apply payments to whatever type of liability it chose); *In re A & B Heating & Air Conditioning, Inc.,* 53 B.R. 54, 57, 13 BCD 571, CCH BLR 70739 (Bkrtcy.M.D.Fla.1985) (IRS bound by debtor's designation in a Bankruptcy Court approved Chapter 11 reorganization plan).

The following cases support the IRS: *In re Frost,* 47 B.R. 961, 965, 12 CBC.2d 990 (D.C.Kan. 1985) (Chapter 13, reversed Bankruptcy Court finding voluntary payment, held mere court involvement rendered payment involuntary); *Matter of Mister Marvins, Inc.,* 48 B.R. 279, 281 (E.D.Mich.1984) (Chapter 11 reorganization, reversed Bankruptcy Court's finding of voluntariness and held distributions of estate property pursuant to Code priorities rendered payments involuntary); *Avildsen v. United States (In Matter Avildsen Tools and Machines, Inc.),* 40 B.R. 253, 256 (N.D.Ill.1984) *aff'd on other grounds,* 794 F.2d 1248 (7th Cir.1986) (District Court held Bankruptcy Court involvement in reorganization Chapter 11 proceeding rendered payment involuntary since it was a legal proceeding); *In re Herald,* 66 B.R. 169, 171, CCH BLR 71439 (Bkrtcy.E.D.N.C.1986) (since claims of IRS were administered through Bankruptcy Court in debtor's Chapter 11 liquidation case, then mere Bankruptcy Court involvement was enough to make distribution involuntary); *See also, In re Obie Elie Wrecking Co., Inc.,* 35 B.R. 114, 115, 11 BCD 324 (Bkrtcy.N.D.Ohio 1983) (a converted Chapter 7 case, Court reconsidered and vacated it's prior Chapter 11 order granting debtor's unopposed motion to allocate, found Bankrupt-

cy Court action rendered trustee's payment involuntary).

**25.** The government cited, *inter alia, In the Matter of Mister Marvins, Inc.,* 48 B.R. 279 (E.D. Mich.1984), for the proposition that "With respect to Chapter 7 cases—such as the instant case—it appears that the courts are in agreement that Chapter 7 distributions are involuntary." *United States' Memorandum In Opposition To Debtor's Motion To Determine Tax Liability,* pages 10–11, (filed February 9, 1987). We disagree. *Marvins* was a Chapter 11 case, and, like the government's error here, *Marvins* incorrectly assumed from the bankruptcy referenced in the dicta from *Muntwyler,* 703 F.2d 1033, 1033, and 1034 n. 2 (7th Cir.1983), that by "court action," *Muntwyler* also meant Bankruptcy Court action. *See also, Girard v. United States (In re Girard),* 57 B.R. 66, 69 n. 3 (Bkrtcy.E.D. Mich.1985) (Chapter 7 case, Bankruptcy Court felt it was bound by *Marvins,* and held Chapter 7 distributions were involuntary). *Matter of Office Dynamics, Inc.,* 39 B.R. 760, 761–62 (Bkrtcy.N.D.Ga.1984) (debtor's Chapter 11 petition had been converted to a Chapter 7, Court held a liquidation distribution by court appointed trustee which required the Court's confirmation was a "judicial action" which rendered debtor's payment involuntary); *In re Obie Elie Wrecking Co., Inc.,* 35 B.R. 114, 115, 11 BCD 324 (Bkrtcy.N.D.Ohio 1983) (Bankruptcy Act, converted Chapter 11 to a Chapter 7 case, Court held trustee was not the agent of the debtor and trustee's Court approved Chapter 7 payments to the IRS was involuntary).

We respectfully disagree with these Courts because we feel they wrongly applied the common law allocation of payment doctrine of *National Bank of the Commonwealth v. Mechanics' National Bank, supra,* (from which the allocation rules were born), and applied a false premise that the mere involvement of the Bankruptcy Court, as rendering any distribution "involuntary," equated with an absolute right of the IRS to allocate. While the involvement of the Bankruptcy Court may render a payment or distribution "involuntary," as in the instant case, it is for this Court, and not the IRS under the circumstances of their failure to institute pre-petition court action or pre-petition collection measures resulting in actual seizure of traced "trust fund" property, to decide the allocation controversy.

248 (Bkrtcy.N.D.Ohio 1986) (Whether debtor's payments to IRS in Chapter 11 proceeding are voluntary or involuntary and thereby determining who may direct allocation of proceeds is not subject to a *per se* rule, but rather, depended on facts of each case).

Similar to the analysis performed by this Court, *Hineline, id.,* at 644–45, *citing, In re B & P Enterprises, Inc.,* 67 B.R. 179, 184 (Bkrtcy.W.D.Tenn.1986), enumerated certain factors a Court should consider when determining whether the trustee-debtor should be permitted to determine the allocation of payments made in the course of a Chapter 11 proceeding. These factors include: (1) the totality of the pre- and post bankruptcy (sic) (petition) facts and circumstances; (2) the history of the debtor; (3) the absence or existence of pre-bankruptcy collection or "enforced collection measures" of the IRS; (4) the nature and contents of a Chapter 11 Plan (e.g. last resort liquidation or reorganization); (5) the presence, extent and nature of administrative and/or Court action; (6) the presence of pre- or post bankruptcy (sic) (petition) agreements between the debtor and the IRS; and (7) the existence of exception or special circumstances or equitable reasons warranting such allocation.

Payments which will permit the IRS to allocate are "involuntary" only if the IRS has engaged in either pre-petition litigation or activated forcible collection measures, beyond a mere notice of levy, which results in an actual seizure of payments prior to a taxpayer's allocation request or the intervening variable, the attachment of Bankruptcy Court jurisdiction. If the government has not instituted such pre-petition litigation or engaged a forcible pre-petition "enforced collection measure" and the debtor has not made a timely pre-petition allocation request, then the Bankruptcy Court, *albeit* at debtor's or a party in interest's request, has the exclusive right to decide the proper allocation of tax payments according to it's own notions of equity and justice:

"[T]he law will make the application according to its own notions of justice. Neither party can make it after a controversy upon the subject has arisen between them, and *a fortiori* not at the trial."

*National Bank of the Commonwealth of New York City v. Mechanics' National Bank of Trenton, New Jersey, supra,* 94 U.S. (4 Otto) at 439. *See also Muntwyler v. United States, supra,* 703 F.2d at 1033, *citing, First National City Bank v. Kline,* 439 F.Supp. 726, 729 (S.D.N.Y.1977) ("[W]here, as here, moneys are repaid under judicial order, the court has exclusive authority to apply the funds."). *Compare Hannan Trucking, Inc., v. United States of America (In re Hannan Trucking, Inc.),* 17 B.R. 475, 81–2 U.S.T.C. (CCH) (Bkrtcy.N.D.Tx.1981) (allocation instructions mailed by debtor-taxpayer not binding on IRS because the allocation was neither timely nor meaningfully made).

## CONCLUSION

Applying *Amos, Muntwlyer,* and *Hineline* to the pre-petition mortgage issue, we find that the debtor voluntarily offered the mortgage to the IRS prior to the later's filing a pre-petition notice of levy or post-petition proof of claim. From the time of debtor's offer until the date of debtor's bankruptcy petition, neither the debtor nor the IRS expressed a desire of a particular allocation if and when the mortgage was to be realized. The mortgage proceeds were realized by the debtor during debtor's Chapter 11 proceeding, but not tendered to the IRS by debtor's counsel until shortly after debtor's Chapter 7 conversion. Upon the IRS's acceptance of the debtor's tender, as accompanied by debtor's attempted reservation of allocation rights, the IRS is bound to apply the proceeds of the cashiers' check according to the terms of this Court's direction since neither party preserved their pre-bankruptcy allocation rights. Under these circumstances, we hold that the debtor may designate the mortgage proceeds.

As for the Chapter 7 distributions by debtor's trustee, and for the reasons and circumstances of this matter, only this Court, and this Court alone, has the sole discretion to allocate them. The IRS has

put forward no argument or evidence to require us to exercise our discretion in its favor against the debtor. Accordingly,

It is hereby ORDERED that Debtor's motion to determine tax liability is GRANTED, and the IRS is hereby ORDERED to apply all monies received from the Debtor and the Trustee to Debtor's trust fund liabilities.