In the Matter of Dean W. CALKINS, Richard G. Lyke, Debtors.

Bankruptcy Nos. MM11–85–02304, MM11–85–02305.

United States Bankruptcy Court, W.D. Wisconsin.

April 30, 1987.

Mary E. Bielefeld, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for IRS.

Frank Ross, Jr., Ross & Chatterton, Madison, Wis., for debtors.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

When Guild Printing, Inc. ("Guild") filed a chapter 11 petition on August 12, 1983, the company's principal business assets were encumbered by a security interest in favor of M & I Bank of Madison ("M & I") in the amount of $75,000.00 and the tax liens in favor of the IRS totalling approximately $26,000.00. Guild's efforts at reorganization failed and on October 29, 1984, it filed a motion to abandon its machinery and equipment with the intention of surrendering that property to its secured creditors. An order of abandonment was signed on November 27, 1984. On December 1, 1984, M & I sold the machinery and equipment at auction for $101,666.50. After satisfying its own secured claim, M & I sent the IRS a check for the balance of $5,100.63 under cover of the letter dated December 28, 1984, which stated:

I have been directed by Guild Printing, Inc. to direct that the sale proceeds enclosed herewith be first applied to any withheld income or FICA taxes of Guilding Printing, Inc.

The IRS ignored the direction contained in the letter and applied the funds it received to the employer portion of Guild's withholding FICA tax liability. During all relevant times Dean Calkins, as Guild's president and treasurer and Richard Lyke, as Guild's vice-president were the individuals responsible for the payment of withheld income and FICA taxes.

On April 5, 1984, a notice of tax levy for $1,596.02 was served by the IRS on the Independence Bank of Madison based on

Calkins' 1980 tax liability. Independence Bank responded to the levy by forwarding a check for $1,596.02 to the IRS on April 6, 1984.

On March 25, 1985, the IRS assessed penalties against Calkins and Lyke individually for 100% of Guild's withholding tax liability of $36,911.42. The assessments were duly filed and perfected. Small credits to the assessment liability were thereafter granted in the following amounts:

| | | |
|---|---|---|
| Calkins | June 17, 1985 | $183.00 |
| Calkins | August 16, 1985 | 23.00 |
| Lyke | March 25, 1985 | 180.00 |
| Lyke | April 15, 1985 | 506.11 |

On November 13, 1985, Calkins and Lyke individually filed chapter 11 petitions. In each of those cases the IRS filed a secured claim in excess of $36,000.00.[1] Thereafter Calkins filed his 1984 federal income tax return by which he sought a refund of $2,737.00 and his 1985 federal income tax return by which he sought a refund of $1,466.00. The IRS processed the returns but "froze" the refunds refusing to pay to Calkins or credit them against his indebtedness. The refund due Lyke on his 1985 return in the amount of $346.42 was likewise frozen.

Calkins and Lyke have objected to the IRS claims in their individual cases on the basis that the check representing net proceeds of the sale of Guild's machinery and equipment paid to the IRS on December 28, 1984, was a voluntary payment which was specifically directed to be applied against the taxes subject to 100% penalty assessment and that each of their tax liabilities should therefore be credited the full amount of that payment as of the time it was made. The IRS in turn contends that the payment was made in a bankruptcy proceeding, was not voluntary, and therefore, may be credited by the IRS against any tax liability of Guild and was properly credited against the nonassessable portion of that tax. Calkins and Lyke also seek to have the refunds held by the IRS and the proceeds of the levy against Calkins' bank account duly credited against their individual tax liability.

## I.

■ FICA and federal income taxes withheld from employees' paychecks by an employer are deemed to be held under a special trust. 26 U.S.C. § 7501(a). Every person responsible to collect and pay over withheld taxes is personally liable for the full amount of the taxes subject to the trust. There is, however, no trust or personal liability for payment of the employer's share of income or FICA taxes. Generally if a taxpayer voluntarily pays the IRS, the taxpayer may designate to which tax the payment will be applied. *Muntwyler v. U.S.*, 703 F.2d 1030, 1032 (7th Cir. 1983).

The question in this case is whether the $5,100.63 payment sent by M & I Bank to the IRS on December 28, 1984, was a voluntary or involuntary payment. If it was voluntary, the direction of application which accompanied it would have to be given effect. On the other hand, if the payment was involuntary, the IRS was justified in allocating the payment as it saw fit. *Id.*

*Muntwyler* is the leading case by the Seventh Circuit on the application of tax payments made on behalf of debtors while subject to insolvency proceedings. As a starting point, the court adopted the frequently cited definition of an involuntary payment in *Amos v. Commissioner*, 47 T.C. 65, 69 (1966):

> An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

*Id.* 703 F.2d at 1032. Holding that IRS's filing of a claim with the assignee for the benefit of creditors was not sufficient to make the payment involuntary, the court clarified:

---

1. Calkins, $39,648.84
   Lyke     39,314.44

The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual *seizure* of property or money as in a levy. (emphasis in original)

. . . .

In the instant case, there was no levy, judicial order, execution or judicial sale; rather, there was a mere filing of a claim.

*Id.* at 1033.

■ In our case, the abandonment of the machinery and equipment and its surrender to M & I was pursuant to a court order. The order was based on the finding that after the $75,000.00 secured claim of M & I and the $26,000.00 tax lien the debtor had no equity in the property. Guild, not the IRS, brought the motion to abandon. The sale of the property which Guild surrendered was undertaken by M & I with the approval and cooperation of Guild. Thus, the timing and the form of payment from sale proceeds which Guild directed to the IRS was directed by Guild and was voluntary as that term is commonly used. Certainly Guild had the opportunity to delay if not ultimately deny payment to the IRS. In any event, Guild was not acting pursuant to a court order or other writ or directive for payment of those sale proceeds at that time. The fact that the payment was in satisfaction of a tax lien does not abrogate the voluntariness which was exhibited as to the time and manner of the payment.

A similar case was noted and distinguished by the *Muntwyler* court, *In re Bulk Sale of Inventory*, 6 Kan.App.2d 579, 631 P.2d 258 (1981). There a corporation employed auctioneers to sell its assets and deposit the proceeds into a registry of the district court. On an interpleader creditors were invited to file claims which the court then determined. The court fixed the amount to be paid on the IRS claims. As the circuit court pointed out in *Muntwyler*, the debtor had voluntarily turned over the assets to the auctioneer, but the district court had decided the amount and the priority of each claim. Thus, the payments were involuntary. *Id.* at 1034. In our case, the abandonment and surrender of the property to M & I ended this court's jurisdiction over the proceeds.[2] There was no seizure or levy directed at the funds in question. The only levy by the IRS in this case was directed at Independence Bank in early 1984 to collect Calkin's personal 1980 taxes. Thus the $5,100.63 payment to the IRS was voluntary as defined by the Seventh Circuit in *Muntwyler*, and must be applied against the trust fund taxes for which Calkins and Lyke are personally liable.

## II.

■ The IRS received a check for $1,596.02 sent by Independence Bank on April 6, 1984. A copy of the notice of levy served on the Bank was apparently returned with the following note typed on it: "We are enclosing $1,596.02 with check no. 723478230 dated April 6, 1984." Calkins' account with Independence Bank was debited $1,596.02. However, the IRS was unable to demonstrate what happened to the check after it was received. Val Thomas, a revenue officer with the IRS for four years, testified that he could not tell if the check had been received. He also testified that if it had been received, he could not tell if it had been credited against Calkins' 1980 federal income taxes. Calkins' attorney requests that the difference of $796.02 between the amount of the check ($1,596.02) and the amount of Calkins' 1980 taxes ($827.00) be credited to Calkins' withholding tax liability. That request seems eminently reasonable in the absence of any proof that such a credit has previously been made.

---

**2.** *See* the Seventh Circuit's recent decision in *In re Xonics*, 813 F. 127, 131–32 (7th Cir.1987) where the court discusses the effect a debtor's abandoning property pursuant to its reorganization plan has on the jurisdiction of the bankruptcy court. The court concludes that "... jurisdiction does not follow the property. It lapses when property leaves the estate." *Id.* at 131.

The IRS concedes that Calkins' refunds for 1984 and 1985 have been held but have not been credited against his withholding tax liability. Therefore it is appropriate that the automatic stay be lifted to allow the IRS to make these credits. The claim of the IRS should reflect the IRS's original claim of $39,648.84 less Calkins' 1984 refund of $2,737.00, Calkins' 1985 refund of $1,466.00 and the net amount of the 1984 levy of $796.02. Similarly the automatic stay should be lifted to allow the IRS to credit the $346.42 refund which the IRS owes Lyke on his 1985 federal income tax return against Lyke's withholding tax liability.

The debtors may prepare and submit an order consistent with this decision.