In re **FRANK MEADOR BUICK, INC., Debtor.**

**Bankruptcy No. 7–80–00436.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

May 9, 1988.

David A. Furrow, Rocky Mount, Va., for debtor.

S. Martin Teel, Jr., Atty., Tax Div. U.S. Dept. of Justice, Washington, D.C., Jean B. Weld, Asst. U.S. Atty., Roanoke, Va., for IRS.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Chief Judge.

The essential question presented is the manner in which the Internal Revenue Service ("IRS") shall credit tax payments made by the trustee. The issue arises because of the debtor's objection to the trustee's proposed distribution of funds. The debtor does not argue that the distribution of the estate's funds to the IRS (the other party in interest) is improper; such a deter-

mination has already been made by this court. Rather, the debtor objects to the *application* by the IRS of the funds to be received by it pursuant to the trustee's distribution.

Briefly, what is at stake here is personal liability for unpaid "trust fund" taxes. When various employee withholding taxes (FICA, FUTA, etc.) are not paid by the employer, the *Internal Revenue Code* provides that those individuals "responsible" for the nonpayment shall be liable therefor.

The taxes at issue in this case were primarily assessed for periods of time between confirmation of the debtor's Chapter 11 plan and the subsequent conversion of the debtor's case to Chapter 7,[1] a period of nearly three and one-half years. During that time, the reorganized debtor was delinquent in the payment of said taxes.

■ After conversion of the case to Chapter 7, the trustee was appointed to liquidate the estate and pay creditors' claims according to statutory priorities. The trustee now has on hand for distribution approximately $40,000.00. It has been determined by prior court order that all of said funds are to be distributed to the IRS in satisfaction of their tax claims. However, the total IRS claim, including interest and penalties, exceeds the $40,000.00 available for distribution. The IRS, under I.R.C. § 6672,[2] can collect a penalty equaling the tax liability from the person responsible for the tax not being paid. Such a penalty is equal to the total of the *tax* not collected, *not* to the *interest* and *penalties* not collected. Thus, the IRS has recourse against the "responsible person," outside of this court, for the amount of their claim representing the principal tax but not for

---

1. Any post-petition, pre-confirmation tax assessments are treated as administrative claims and are not at issue in this case.

2. Sec. 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax.
(a) General rule.
Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable. 26 U.S.C. § 6672(a) (1986).

that amount of their claim representing interest and penalties.

To effectuate § 6672, it is the "policy" of the IRS to credit payments made on a corporate account to the interest and penalty *before* they are credited to the principal tax, thus preserving their ability to recover the principal tax amount from a different source. *See Internal Revenue Manual,* P–5–60.

The debtor seeks an order from this court that the funds disbursed to the IRS be allocated to the accrued tax to the exclusion of interest and penalties, thereby limiting the personal liability of the responsible party for payment of the taxes.

The IRS, on the other hand, argues for its right to apply the tax payments as it sees fit, undoubtedly meaning that they will be allocated first to interest and penalties.

The parties apparently agree that the question of the debtor's entitlement to the relief requested turns on whether the payments made to the IRS pursuant to the plan of reorganization are to be deemed "voluntary" or "involuntary." This is not a novel question of law. The issue has been frequently litigated and has led to many reported cases with divergent results. If the tax distribution at issue is considered a voluntary payment by the debtor, the debtor is entitled to have the taxes allocated as it sees fit. If the disbursement is involuntary, the IRS will decide what liabilities will be satisfied and in what order. *Muntwyler v. United States,* 703 F.2d 1030 (7th Cir.1983); *O'Dell v. United States,* 326 F.2d 451 (10th Cir.1964).

All cases analyzing the voluntariness of tax payments made pursuant to a plan of reorganization start with the widely accepted definition of an involuntary payment found in *Amos v. Commissioner,* 47 T.C. 65, 69 (1966).

"An involuntary payment of federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefor."

At least three schools of thought have developed out of the *Amos* definition. One theory is that all tax payments made under a bankruptcy case are involuntary. Generally speaking, these cases hold that the bankruptcy case itself constitutes a sufficient "legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefor." *In re Obie Elie Wrecking Co., Inc.,* 35 B.R. 114 (N.D.Ohio 1983) ("Where court action requires payments, payments are not 'voluntary.'"); *In re Frost* 47 B.R. 961 (D.Kan. 1985) (Bankruptcy is a "legal action in which the I.R.S. has filed a claim for delinquent taxes."); *In re Avildsen Tools & Machine, Inc.,* 40 B.R. 253 (N.D.Ill.1984), *aff'd.,* 794 F.2d 1248 (7th Cir.1986) ("... regardless of whether the debtor is involved in a liquidating bankruptcy or a reorganization, the IRS is precluded from attempting any collection other than by filing a claim in the judicial proceeding. Thus, the fact that this case deals with a reorganization rather than a liquidating bankruptcy does not change the involuntary nature of [the debtor's] payments.") *In re Mister Marvins, Inc.,* 48 B.R. 279 (E.D.Mich.1984) ("Furthermore, it is difficult to understand how the payment could have been deemed to have been voluntary when the trustee determined that a court Order was necessary in order to authorize the payment.") *See also In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, (9th Cir.1987); *In re R.L. Inge Development Corp.,* 78 B.R. 793 (Bankr.E.D.Va. 1987).

A second line of cases has found that tax payments made through a bankruptcy proceeding *are,* or at least *can be* voluntary; that the IRS's administrative task of filing a claim, though a "legal proceeding" does not amount to an action comparable to a "distraint or levy." In other words, bankruptcy does not amount to a forced collection measure. Thus, especially pursuant to a reorganization plan wherein the debtor has great leeway in deciding upon repayment methods, the tax payments should be considered voluntary. *In re Tom LeDuc Enterprises, Inc.,* 47 B.R. 900, (W.D.Mo.

1984) ("... since there was no seizure of the property or money such as in a levy, the debtor's payment to the IRS was 'voluntary in every sence [sic] of the word and thus should have been applied as the debtor directed.'") (Quoting *In re Avildsen Tools & Machines,* 30 B.R. 911 (Bankr.N.D. Ill.1983), *rev'd.,* 40 B.R. 253 (N.D.Ill.1984), *Ducharmes & Co., Inc. v. Michigan,* 75 B.R. 71, (E.D.Mich.1987)) (General rule of voluntary payments should be followed where no "express bankruptcy policy" exists to govern the dispute), *In re Professional Technical Services, Inc.,* 80 B.R. 157 (Bankr.E.D.Mo.1987) ("A debtor's Chapter 11 proceeding and plan do not ... comprise a forum for compelling the payment of claims. This leads the Court to conclude that the Debtor's payments under the Chapter 11 Plan are voluntary and may therefore be allocated by the debtor in a confirmable plan.") *See also, In re Gilley Consulting Engineers, Inc.,* 74 B.R. 568 (Bankr.N.D.Ga.1987); *In re Calkins,* 74 B.R. 218, (Bankr.W.D.Wis.1987).

■ A third line of reasoning has evolved, rejecting a *per se* voluntary or involuntary characterization of taxes paid pursuant to a Chapter 11 plan. This line adopts the pragmatic theory that the voluntary/involuntary issue ought to be decided by the bankruptcy court on a case-by-case basis after considering all the facts and equities therein. *In re B & P Enterprises, Inc.,* 67 B.R. 179 (Bankr.W.D.Tenn.1986); *In re Hineline,* 72 B.R. 642 (N.D.Oh.1987) ("... the Court recognizes that each Chapter 11 debtor finds himself in his own unique set of circumstances which may often dictate the degree of court involvement required in that particular case. The pronouncement of a *per se* or inflexible rule would not permit the court to consider individual situations"); *In re A & B Heating & Airconditioning,* 823 F.2d 462 (11th Cir. 1987). This court adopts this as the better reasoned rule applied in each specific case based on the particular circumstances prevailing thereon.

In *A & B Heating,* the 11th Circuit decided that there exists a public policy favoring successful reorganizations, and that allowing the IRS an unfettered right to allocate tax payments would run counter to that policy. The court then adopted the reasoning and language of *B & D Enterprises* in enumerating the factors necessary for consideration of the question:

In weighing the competing public policy considerations of the Internal Revenue and Bankruptcy Codes, we are persuaded by the court's reasoning in *In re B & P Enterprises, Inc.* (citation omitted): "the allocation question in a Chapter 11 case under the Bankruptcy Code should be left to judicial discretion to be decided on a case-by-case basis." In making this determination, the bankruptcy court is to consider the "equitable reasons warranting such allocations." Typically, the court should look to the history of the debtor, the absence or existence of pre-bankruptcy collection or "enforced collection measures" of the I.R.S. against the corporation and responsible corporate officers; the nature and contents of a Chapter 11 plan (e.g., last resort liquidation or reorganization); the presence, extent and nature of administrative and/or court action; the presence of pre- or post-bankruptcy agreements between the debtor (or trustee) and the I.R.S.; and the existence of exceptional or special circumstances or equitable reasons warranting such allocation.

823 F.2d 462, 465–466.

In an exhaustive analysis, the court in *In re Vermont Fiberglass,* 76 B.R. 358 (Bankr.D.Vt.1987), a case with a similar factual basis, also adopted the case-by-case method of resolution. Under the particular circumstances of that case, the court found that the tax payments were voluntary, notwithstanding the fact that it was the non-debtor "responsible person," and not the debtor itself, that stood to gain or lose from the adjudication.

[W]e are not concerned with either an injunction or litigation of a nondebtor's tax liability against the IRS, rather, we are resolving a dispute between the debtor and the IRS over an allocation of payments to the debtor's "Trust Fund Taxes." We hold it is immaterial that the resolution of this matter may also

have a consequential effect on a separate and distinct tax liability of a nondebtor. Furthermore, while it is true that a debtor ceases to control the estate after a conversion from a Chapter 11 to a Chapter 7 proceeding, the debtor has a very real and personal stake in seeing that distributions are made in a fair manner which are efficacious to its fresh start interest.

*Id.* at 368.

Our holding renders unnecessary the resolution as to whether debtor's tender [of tax payments] occurred during debtor's Chapter 11 or Chapter 7 proceeding. In either proceeding, under the present circumstances of the IRS's failure to initiate pre-petition litigation or engage in forcible pre-petition collection measures, this Court, and not the IRS, trustee, or the debtor, has the exclusive power to designate the proper allocation of payments, *albeit*, at the request of the debtor, or other party in interest.

*Id.* at 370.

██ This court finds the factual circumstances and reasoning of *Vermont Fiberglass* to be similar and especially persuasive to the case at bar. The court notes the debtor's argument herein: that it has tried to pay its tax liabilities throughout the history of this bankruptcy case; that the debtor attempted to get court approval for the sale of its assets as early as March of 1982 (with the proceedings being used to pay off the IRS); that the IRS moved to convert this case to Chapter 7 and did not become secured on its tax lien until June 14 and 16, 1982; and that approximately $36,-000.00 in interest and penalties has accrued to the debtor while litigation and appeals have been pending concerning the IRS claims.

The IRS claims that equity runs in its favor since the debtor chose not to convert the case to Chapter 7 until July of 1984, with full knowledge that tax liabilities continued to mount. Though true, it should be realized that, while tax liabilities continued to grow with the debtor's knowledge, portions of this case were appealed to the Fourth Circuit Court of Appeals and re-manded back to this court and in most, the debtor was appellee.

The IRS also argues that it should be able to treat the trust fund taxes as involuntary in recognition of "the fact that the IRS had to activate a proceeding to convert the case in 1982, with $23,000.00 in post-petition liabilities owed, and pursue collection efforts, in the bankruptcy case, and outside, by the filing of tax liens, against the dealership." Brief of IRS filed 10/28/87 at 6. This court is not of the opinion that either pursuing a claim in this court, filing a tax lien or filing a motion to convert amounts to such a "forced collection measure" that this debtor's efforts to see the IRS paid should be considered involuntary.

Payments which will permit the IRS to allocate are "involuntary" only if the IRS has engaged in either pre-petition litigation or activated forcible collection measures, beyond a mere notice of levy, which results in an actual seizure of payments prior to a taxpayer's allocation request or the intervening variable, the attachment of Bankruptcy Court jurisdiction.

*Vermont Fiberglass* at 372.

The court finds that the debtor has consistently tried throughout the history of its Chapter 11 case to pay the IRS its sums due. A consideration of the several factors cited, *supra*, taken with the circumstances and equities of this case, indicate that the trustee's distribution to the IRS should be considered voluntary payments on behalf of the debtor, and that said payments should be allocated to the trust fund portion of the secured 941 taxes ahead of interest and penalties due.

It is so ORDERED.