In re **FRANK MEADOR BUICK, INC.,** Debtor.

**INTERNAL REVENUE SERVICE, Appellant,**

v.

**FRANK MEADOR BUICK, INC., Appellee.**

**Bankruptcy No. 7-80-00436-HPR. Civ. A. No. 88-0349-R.**

United States District Court, W.D. Virginia, Roanoke Division.

March 16, 1989.

Jean B. Weld, Asst. U.S. Atty., Roanoke, Va., Delores Dillman, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

David A. Furrow, Greer, Greer & Furrow, Rocky Mount, Va., for defendant.

MEMORANDUM OPINION

JAMES C. TURK, Chief Judge.

The government appeals a ruling of the Bankruptcy Court for the Western District of Virginia by which that court directed how the Internal Revenue Service should allocate payments a Chapter 7 trustee was to make to the Service. The court finds the Bankruptcy Court's decision to be inconsistent with the developing case law and must reverse that court's ruling.

The debtor filed a Chapter 11 bankruptcy petition in April, 1980, and the Bankruptcy Court confirmed the debtor's proposed reorganization plan the following December. The Bankruptcy Court converted the case

to a Chapter 7 liquidation proceeding in July, 1984, and subsequently appointed a Chapter 7 trustee to liquidate the debtor's estate and pay creditors' claims according to statutory priorities.

During the 3½ years between confirmation and conversion to liquidation, the debtor failed to pay over to the government certain taxes it was required to withhold from its employees' pay. The Service accordingly filed and perfected tax liens against the debtor in June, 1982. After converting the case, the Bankruptcy Court determined that the trustee should distribute all available funds, which amounted to approximately $40,000, to the Service in order to satisfy tax claims against the debtor. The trustee filed a distribution proposal with the Bankruptcy Court in April, 1987, and the court approved the proposal the following month.

The debtor objected to the distribution proposal later in May, 1987. The debtor asked the court to direct the Service to allocate the funds received from the trustee to the principal amount of taxes the debtor owed before applying the trustee's payment to interest and penalties the Service had assessed on the principal. The debtor contended that the trustee's distribution represented the debtor's voluntary payment to the Service and that the debtor was therefore entitled to determine how the Service should allocate amounts the debtor paid it. The Service conceded, and concedes before this court, that "[i]n general, when a taxpayer submits a voluntary [tax] payment, ... he is entitled to designate the tax liability to which the payment will be applied." The Service argued, however, that the trustee's distribution was not such a voluntary payment of a taxpayer and that the Service was accordingly entitled to allocate the distribution to interest and penalties before principal in accordance with agency practice. The significance of how the Service allocates the trustee's payment lies in the fact that when an employer fails to pay required withholding taxes, the Service may collect any portion of the principal amount of withholding taxes the employer does not pay from the person or persons associated with the employer who

is responsible to see that the taxes are withheld from the employees' pay and paid over to the government. 26 U.S.C. § 6672 (1982). However, responsible persons' liability does not extend to any interest or penalties the employer may fail to pay. In this case, the government's tax claim, including interest and penalties, exceeds the approximately $40,000 available to the trustee. Whether the Service applies the funds it receives to the principal amount owed or to interest and penalties therefore will determine the extent to which the debtor's responsible person or persons will be individually liable for unpaid taxes.

By a Memorandum Opinion and Order of May, 1988, 85 B.R. 392 the Bankruptcy Court granted the debtor's request and ordered the Service to allocate the trustee's distribution to the principal amount of taxes the debtor owed before applying any money received to the interest or penalties owed. The court saw case authority for three contradictory conclusions: (1) that all tax payments made under a bankruptcy case are involuntary; (2) that tax payments made under a bankruptcy case are generally voluntary; and (3) that courts should weigh all material facts and equities in a case in order to determine if tax payments are voluntary. The court placed strong reliance on *In re Vermont Fiberglass, Inc.,* 76 B.R. 358 (Bankr.D.Vt.1987), *rev'd,* 88 B.R. 41 (D.Vt.1988), and held that the court should balance the facts and equities of the case to determine if the trustee's payment to the Service was a voluntary payment of the debtor. The court concluded that the debtor's effort throughout the course of the bankruptcy proceeding to see that the taxes were paid weighed heavily in favor of its request and directed the Service to allocate the trustee's distribution to principal before interest or penalties.

Three circuits have found, however, that payments made pursuant to a Chapter 11 bankruptcy proceeding were not voluntary. *See DuCharmes & Co. v. Michigan,* 852 F.2d 194, 196 (6th Cir.1988) (per curiam); *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 802–03 (9th Cir.1987); *In re Ribs–R–Us, Inc.,* 828 F.2d 199, 202–04 (3d Cir.1987). *See also In re Avildsen Tools &*

*Machine, Inc.,* 794 F.2d 1248, 1254 (7th Cir.1986) (Ripple, J., concurring).

The Eleventh Circuit, on the other hand, held that to allow the Service to allocate any payments received from a Chapter 11 debtor would contravene a legislative purpose of the Bankruptcy Code. *In re A & B Heating & Air Conditioning,* 823 F.2d 462, 465 (11th Cir.1987), *vacated to consider mootness,* 486 U.S. 1002, 108 S.Ct. 1724, 100 L.Ed.2d 189 (1988), *reinstated,* 861 F.2d 1538 (11th Cir.1988). The Code aims to benefit creditors, the court reasoned, by preserving the "economic life" of the bankrupt so that the debtor can pay creditors more than they might have received if the bankrupt had been liquidated. If the Service could allocate any payment received from a Chapter 11 debtor, it might hamper bankrupts' ability to rehabilitate, an ability Congress sought to foster when it enacted the Code. The court therefore ruled that the courts should decide on a case-by-case basis how the Service should allocate tax payments received from a given Chapter 11 debtor by weighing the equitable considerations in each case. *Id.* at 466.

Even were this court to reject the holdings of the Third, Sixth and Ninth Circuits and instead embrace that of the Eleventh, the court finds the Eleventh Circuit's reasoning inapplicable to this case. Since the debtor here is in Chapter 7 liquidation proceedings, allowing the Service to designate tax payments it receives will not contravene the congressional policy of affording maneuvering room to debtors in reorganization. In addition, it is not without relevance that *Vermont Fiberglass, supra,* the bankruptcy case on which the Bankruptcy Court relied heavily, was subsequently reversed by the District Court for the District of Vermont. 88 B.R. 41 (D.Vt.1988).

For the reasons stated, the court will enter an appropriate order this day to reverse the opinion and order of the Bankruptcy Court and remand this cause to the Bankruptcy Court for further proceedings consistent with this opinion.